**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

FOX NEWS NETWORK, LLC.,            :

                               :       **No. 09 Civ. 00272 (AKH)**

                    Plaintiff,     :

                               :       **STATEMENT OF MATERIAL**

                               :       <u>**FACTS NOT IN DISPUTE**</u>

    -against-                  :

                               :       **ECF CASE**

BOARD OF GOVERNORS OF THE     :

FEDERAL RESERVE SYSTEM,       :

                               :

                    Defendant.   :

-------------------------------------------------------------X

Plaintiff Fox News Network, LLC ("<u>Fox News</u>"), owner of the Fox Business Network (collectively "<u>Fox Business</u>"), by and through its attorneys, Mintz and Gold LLP, respectfully submits this Statement of Material Facts, as to which there is no genuine issue for trial, pursuant to Local Rule 56.1(a):

1.      Fox News, owner of Fox Business, is a Delaware limited liability company with its principal place of business located at 1211 Avenue of the Americas, New York, New York. *See* Fox Business's Complaint ("<u>Compl.</u>") at ¶¶ 9 and 25, annexed as Exhibit 9 to the Declaration of Steven G. Mintz dated March 27, 2009 ("<u>Mintz Decl.</u>").

2.      Fox Business is a 24/7 cable news network and a member of the news media.  Fox Business is primarily engaged in the dissemination of business news and information to the public.  *See* Compl. at ¶ 9; *see also* the Answer of defendant Board of Governors of the Federal Reserve System (the "<u>Board</u>") at ¶ 25, annexed as Exhibit 10 to the Mintz Declaration (hereafter the "<u>Answer</u>").

3.      The Board is an agency of the United States government.  *See* Answer at ¶ 1.

4.     The Board's responsibilities include leading the nation's monetary policy and supervising the Federal Reserve System's network of Federal Reserve Banks ("FRBs"). http://federalreserve.gov/aboutthefed/mission.htm.

5.     There are twelve regional FRBs, which operate under the supervision of the Board and are part of the Federal Reserve System for implementing federal monetary policy. http://www.federalreserve.gov/pubs/frseries/frseri3.htm.

6.     The Board and the Federal Open Market Committee (the "Committee")  have the following responsibilities:  (1) conducting the nation's monetary policy by influencing money and credit conditions in the economy in pursuit of full employment and stable prices; (2) supervising and regulating banking institutions to ensure the safety and soundness of the nation's banking and financial system and to protect the credit rights of consumers; (3) maintaining the stability of the financial system and containing systemic risk that may arise in financial markets; (4) providing certain financial services to the U.S. government, to the public, to financial institutions, and to foreign official institutions, including playing a major role in operating the nation's payment systems.  *See* Compl. at ¶ 10 and Answer at ¶ 10.

7.     Among the methods traditionally used by the Federal Reserve System to regulate the banking and financial system is lending money to private financial institutions, primarily through the "Discount Windows" operated by the twelve regional FRBs.  *See* the January 6, 2009 letter from the Board (the "Jan. 6 Letter") annexed to the Mintz Decl. at Exhibit 8, p. 2; *see also* the January 16, 2009 letter from the Board (the "Jan. 16 Letter") annexed to the Mintz Decl. at Exhibit 3, p. 2.

8.     Under the "Discount Window" system, the Federal Reserve System lends money on a short-term basis to eligible depository institutions, *i.e.*, commercial banks, savings and loan

2

associations, savings banks and credit unions.  *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter, p. 2) and Exhibit 3 (Jan. 16 Letter, p. 2).  All loans obtained through the discount windows are secured by collateral.  www.frbdiscountwindow.org/cfaq.cfm?hdrID=14&dtlID=89.  *See also* Answer at ¶ 12; Mintz Decl. at Exhibit 8 (Jan. 6 Letter, p. 3) and Exhibit 3 (Jan. 16 Letter, p. 3).

9.      On or around August 17, 2007 the Board approved temporary changes to the primary credit program of the discount window, allowing the provision of term credit for up to 30 days.  *See* Answer at ¶ 12.

10.      On or around March 17, 2008 the Board authorized a change in the primary credit program of the discount window to allow primary credit loans for terms of up to 90 days, which change was thereafter implemented by the Federal Reserve Banks.  *See* Answer at ¶ 12.

11.      Commencing in 2007 and continuing in 2008, the Board authorized the Federal Reserve Banks to extend credit via a number of new lending facilities including the Primary Dealer Credit Facility, the Term Security Lending Facility and the Term Auction Facility.  *See* Answer at ¶ 12.

12.      These initiatives have lengthened the duration of access to liquidity, broadened the types of eligible collateral, expanded the range of eligible counterparties and reduced the costs of borrowing from the Federal Reserve Banks.  *See* Compl. at ¶ 13 and Answer at ¶ 13.

13.      This expansion was undertaken to relieve liquidity problems in the banking industry and improve the financial system's stability.  *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter, p. 3) and Exhibit 3 (Jan. 16 Letter, p. 3); *see also* Compl. at ¶ 12; Answer at ¶ 12.

14.      The addition of these facilities enabled the Federal Reserve Banks to lend to "primary dealers," *i.e.*, banks and securities broker-dealers.  *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter, p.3) and Exhibit 3 (Jan. 16 Letter, p. 3); *see also* Compl. at ¶ 12; Answer at ¶ 12.

15.    The Board's lending programs increased from approximately $1 million in primary credit Discount Window lending during the week ended August 8, 2007 to an aggregate of $188 billion as of December 31, 2008.  *See* Compl. at ¶ 14 and Answer at ¶ 14.

16.    Information concerning the borrowers' identities, the amounts borrowed, and the nature and quality of the collateral that secures the loans is not publicly available.  *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter, pp. 4 and 5) and Exhibit 3 (Jan. 16 Letter, pp. 4 and 5).

### A. *The First FOIA Request*

17.    On November 10, 2008, Fox Business submitted and the Board received a Freedom of Information Act ("FOIA") request via the Board's website at www.federalreserve.gov/generalinfo/foia/EFOIAForm.cfm. (the "First FOIA Request").  *See* Mintz Decl. at ¶ 2; *see also* Compl. at ¶¶ 17 and 19, and Answer at ¶¶ 17 and 19.

18.    The First FOIA Request sought "the names of institutions receiving Federal Reserve lending from programs including but not limited to the following:  Regular OMOs; Single-Tranche OMO Program; Discount Window; Term Discount Window Program; Term Auction Facility; Primary Dealer Credit Facility; Transitional Credit Extensions; ABCP Money Market Liquidity Facility; Securities Lending; Term Securities Lending Facility; Term Securities Lending Facility Options Program; and any other Federal Reserve Lending Facility not mentioned above."  *See* Mintz Decl. at ¶ 2; *See also* Compl. at ¶ 18 and Answer at ¶ 18.

19.    The First FOIA Request also requested "an accounting of the collateral provided by these institutions in exchange for the lending."  *See id.*

20.    By letter dated November 10, 2008, the Board acknowledged receiving the First FOIA Request (the "Nov. 10 Letter").  A copy of the Nov. 10 Letter is annexed to the Mintz Decl. at Exhibit 1; *See also* Compl. at ¶ 19, and Answer at ¶ 19.

21.     On November 18, 2008 Fox Business sent the Board a letter to clarify and narrow the First FOIA Request (the "Nov. 18 Letter").  The Nov. 18 Letter stated that Fox Business was seeking "the names of institutions receiving Federal Reserve lending pursuant to any Federal Reserve lending facility" and "an accounting of the collateral provided by these institutions," with the request limited to "all Federal Reserve lending that occurred between August 8, 2007 and November 17, 2008."  Further, the Nov. 18 Letter stated that the requester "will pay all fees incurred in the processing of [the] request."  A copy of the Nov. 18 Letter is annexed to the Mintz Decl. at Exhibit 2; *see also* Compl. at ¶ 20 and Answer at ¶ 20.

22.     The Board failed to respond to the First FOIA Request within 20 days.  *See* Answer at ¶¶ 3 and 21.  Instead the Board responded to the First FOIA Request by sending the Jan. 16 Letter.  *See* Mintz Decl. at Exhibit 3.

23.      Ultimately, in the Jan. 16. Letter, the Federal Reserve acknowledged that responsive records existed, but asserted that such records "contain[ed] or consist[ed] of the following kinds of exempt information: trade secrets and commercial or financial information obtained from a person and privileged or confidential; and inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* Mintz Decl. at Exhibit 3 (Jan. 16 Letter, p. 4).

24.     The Board also asserted in the Jan. 16 Letter that "no reasonably segregable nonexempt information was found."  *Id.*

25.     With respect Fox Business's request for an accounting of the collateral, the Board asserted it did not locate any information within its control.  *Id.* at p. 5.

26.     In addition to invoking two of the enumerated FOIA exemptions, namely, Exemption 4 (5 U.S.C. § 552(b)(4)) and Exemption 5 (5 U.S.C. § 552(b)(5)), the Jan. 16

Letter contained a discussion of the agency's policy reasons for refusing to provide information about individual lending transactions.  *Id. at*  pp. 4 and 5.

### B. *The Second FOIA Request*

27.    On November 18, 2008 Fox Business sent a second FOIA request, along with a request for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) (the "Second FOIA Request") via UPS for overnight delivery to the Board.  A copy of the Second FOIA Request is annexed to the Mintz Decl. at Exhibit 4; *see also* Complaint at ¶ 22 and Answer at ¶¶ 2 and 22.

28.    The Second FOIA Request asked for documents "[f]or the months of September 2008 and October 2008" identifying "all institutions that have participated in any Fed[eral Reserve] lending program, including, but not limited to, Regular OMO, Single-Tranche OMO, Discount Window, Term Discount Window Program, Term Auction Facility, Primary Dealer Credit Facility, Transitional Credit Extensions, ABCP Money Market Fund Liquidity Facility, Securities Lending, Term Securities Lending Facility, and the Term Securities Lending Facility Options Program" ("Item No. 1").  *See* Mintz Decl. at Exhibit 4 (Second FOIA Request, p. 1); *see also* Compl. at ¶ 23 and Answer at ¶ 23.

29.    The Second FOIA Request also asked for records showing (a) the amounts borrowed by each named institution and (b) the collateral pledged by each institution ("Item No. 2").  Finally, Fox Business requested records relating to the collateral held by the [Board] at the close of business on November 14, 2008 ("Item No. 3").  *See* Mintz Decl. at Exhibit 4 (Second FOIA Request, pp. 1 and 2); *see also* Compl. at ¶ 24 and Answer at ¶ 24.

30.    Further, Fox Business "agree[d] to pay reasonable fees for the requested records" and indicated that a response was expected "within ten (10) calendar days."  *See*

Mintz Decl. at Exhibit 4 (Second FOIA Request, p. 2); *see also* Compl. at ¶ 26 and Answer at ¶ 26.

31.     Finally, with respect to its request for expedited processing, Fox Business noted that it is a member of the news media and that its "requests concern matters of current exigency to the American public." *See* Mintz Decl. at Exhibit 4 (Second FOIA Request, p. 2).

32.     By letter dated November 20, 2008 (the "Nov. 20 Letter"), the Board acknowledged receipt of the Second FOIA Request on November 20, 2008. A copy of the Nov. 20 Letter is annexed to the Mintz Decl. at Exhibit 5. *See also* Compl. at ¶ 27 and Answer at ¶ 27.

33.     The Board failed to respond to the Second FOIA Request within 10 days. Instead, the Board responded to the Second FOIA Request by sending the Jan. 6 Letter. *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter); *See also* Compl. at ¶ 31 and Answer at ¶¶ 3 and 31.

34.     By letter dated December 1, 2008 (the "Dec. 1 Letter"), the Federal Reserve granted the Second FOIA Request expedited treatment and stated that the request would be processed as soon as practicable. A copy of the Dec. 1 Letter is annexed to the Mintz Decl. at Exhibit 6; *see also* Compl. at ¶ 29 and Answer at ¶ 29.

35.     On December 18, 2008 the Board sent Fox Business a letter (the Dec. 18 Letter") in which it "extend[ed] the period of [its] response until January 6, 2008, in order to consult another agency or with two or more components of the Board having a substantial interest in the determination of the request." A copy of the Dec. 18 Letter is annexed to the Mintz Decl. at Exhibit 7. *See also* Compl. at ¶ 30 and Answer at ¶ 30.

36.     Ultimately, in the Jan. 6. Letter, the Federal Reserve acknowledged that its staff searched for and found documents responsive to item Nos. 1 and 2 of the Second FOIA Request, but asserted that such records "contain[ed] or consist[ed] of the following kinds of exempt information: trade secrets and commercial or financial information obtained from a person and privileged or confidential; and inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter, p. 4); *see also* Compl. at ¶ 31 and Answer at ¶ 31.

37.     The Board also asserted in the Jan. 6 Letter that "no reasonably segregable nonexempt information was found."  *Id.; see also* Compl. at ¶ 31 and Answer at ¶ 31.

38.     Finally, with respect to Item No. 3, (Fox Business's request for records of collateral held by the Board at the close of business on November 14, 2008), the Board asserted it did not locate any information within its control. *Id.* at p. 5; *see also* Compl. at ¶ 31 and Answer at ¶ 31.

39.     In addition to invoking Exemptions 4 and 5 [5 U.S.C. § 552(b)(4), (5)], the Jan. 6 Letter contained a discussion of the agency's policy reasons for refusing to provide information about individual lending transactions.  *See* Mintz Decl. at Exhibit 8 (Jan. 6 Letter, pp. 4 and 5).

### C.  *Fox Business Initiates a FOIA Action*

40.     On January 12, 2009, Fox Business filed its complaint in this action, alleging that the Board had failed to comply with its disclosure obligations under FOIA. *See* Compl. at ¶ 4.

41.    The complaint demands declaratory relief, as well as an injunction requiring the Board to immediately produce the records sought in the First and Second FOIA Requests.  *See* Compl., pp. 13 and 14.

42.    On January 15, 2009, Fox Business submitted an order to show cause in connection with a contemplated motion for a preliminary injunction.  *See* Mintz Decl. at ¶ 14.

43.    Pursuant to an agreement reached by the parties during the January 22, 2009 conference with the Court, Fox Business withdrew the motion with the understanding that one or both parties would bring the issues before the Court through summary judgment motions pursuant to Fed. R. Civ. P. 56.  *See* Mintz Decl. at ¶ 14.

44.    The parties' memorialized the above agreement in a stipulation that was So-Ordered by the Court on January 26, 2009 (the "Stipulation and Order").  The Stipulation and Order is annexed to the Mintz Decl. as Exhibit 11.

45.    On February 19, 2009, the Board answered the complaint.  (*See* Mintz Decl., at Exhibit 10).

46.    The Board once again acknowledged in its Answer that responsive records exist but contended that such records "were withheld on the basis of exemptions contained in the FOIA."  *See* Answer at ¶ 10.

47.    Pursuant to the Stipulation and Order, on February 19, 2009 the Board filed two *Vaughn* indexes, one pertaining to the First FOIA Request (the "First Vaughn Index") and the second, pertaining to the Second FOIA Request (the "Second Vaughn Index").  In both indexes, the Board reiterated its exemption claims.  The First *Vaughn* Index and the Second *Vaughn* Index are annexed to the Mintz Decl. at Exhibits 12 and 13 respectively.

48.    In both *Vaughn* indexes, the Board admitted that is has "Origination Reports," "Term Reports," and "Emergency Credit Reports" containing facts about recent loan transactions totaling approximately 5912 pages responsive to the First FOIA Request and 2998 pages responsive to the Second FOIA Request.  *See* Mintz Decl. at Exhibits 12 and 13 (the First and Second *Vaughn* Indexes).

49.    According to the Board, the Reports were "prepared using raw data provided to Board staff on a daily basis by the Federal Reserve Banks (which obtained and derived the information from records of transactions with the borrowing institutions").  *See* Mintz Decl. at Exhibits 12 and 13 (the First and Second *Vaughn* Indexes).

50.    In both *Vaughn* indexes, on repeated occasions with regard to each document category, the Board reiterated the exemption claims that it relied on in the Jan. 6 Letter and the Jan. 16 Letter, and in the Answer.  In addition, the Board stated:

> [T]hese reports are being withheld in full under FOIA exemption 5 because they are inter-agency and intra agency memoranda which contain sensitive information, not otherwise available, immediate release of which would significantly harm the Government's monetary functions or commercial interests.

*See* Mintz Decl. at Exhibits 12 and 13 (the First and Second *Vaughn* Indexes).

51.    Pursuant to the Stipulation and Order, on February 25, 2009 the parties conducted a face-to-face meeting to narrow and clarify the issues between them.  *See* Mintz Decl. at ¶ 17.

52.    The face-to face meeting was attended by the attorneys for Fox Business (Steven Mintz, Lisabeth Harrison and Paul Ostensen) and Carlotta Cassidy, Senior Media Counsel of Fox News.  Senior Counsel Yvonne Mizusawa attended for the Board.  *See* Declaration of Carlotta Cassidy dated March 27, 2009 ("Cassidy Decl.") at ¶ 3.

53.     During the February 25, 2009 meeting the Board made it clear that it has no intention of disclosing any information.  *See* Mintz Decl. at ¶ 18.

54.     When asked, during the February 25, 2009 meeting about the Board's search efforts, Ms. Mizusawa stated that Allison Thro supervised the search for records in response to Fox Business's FOIA requests.  *See* Cassidy Decl. at ¶ 4.

55.     When asked about Fox Business's request for records concerning collateral pledged by borrowers, and whether such records existed, Ms. Mizusawa stated that the Board had consulted with the FRBs regarding the collateral records and asked them to conduct a search. Ms. Mizusawa confirmed that the collateral records exist at the FRBs.  *See* Cassidy Decl. at ¶ 5.

56.     During the February 25, 2009 meeting, Ms. Mizusawa also took the position that records of pledged collateral are not "records of the Board" subject to the Board's FOIA obligations to search and/or disclose because the records in question are generated and maintained by the FRBs.  *See* Mintz Decl. at ¶ 19; Cassidy Decl. at ¶ 5.

Dated:   New York, New York
         March 27, 2009

**MINTZ & GOLD LLP**


/s/ Steven G. Mintz
Steven G. Mintz
Paul Ostensen
470 Park Avenue South
10th Floor North
New York, N.Y. 10016-6819
Tel:  (212) 696-4848
Fax:  (212) 696-1231
mintz@mintzandgold.com
ostensen@mintzandgold.com
*Attorneys for Plaintiff*
*Fox News Network, LLC*
