**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

FOX NEWS NETWORK, LLC,                      :
                                            :
                          Plaintiff,        :        Case No. 09-cv-00272 (AKH)
          -against-                         :
                                            :              ECF Case
BOARD OF GOVERNORS OF THE                   :
FEDERAL RESERVE SYSTEM,                     :
                                            :
                          Defendant.        :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
<u>**SUMMARY JUDGMENT**</u>

**MINTZ & GOLD LLP**
470 Park Avenue South
10th Floor North
New York, New York 10016-6819
Tel:  (212) 696-4848
Fax:  (212) 696-1231
*Attorneys for Plaintiff*
*Fox News Network, LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

TABLE OF EXHIBITS .............................................................................. vii

INTRODUCTION ....................................................................................... 1

FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................ 10

I.      FOX BUSINESS IS ENTITLED TO JUDGMENT ON ITS CLAIMS
UNDER THE STANDARDS GOVERNING FOIA DISPUTES ........................... 10

      A.    Summary Judgment is the Proper Remedy in FOIA Cases Which
Present Only Questions of Law ................................................... 10

      B.    Application of the Rules Governing the Parties' Respective Burdens of
Proof Compels the Conclusion that Fox Business Is Entitled to
Summary Judgment on Its FOIA Claims ...................................... 11

II.    THE FOIA EXEMPTION FOR CONFIDENTIAL COMMERCIAL AND
FINANCIAL INFORMATION DOES NOT APPLY TO THE
INFORMATION FOX BUSINESS IS SEEKING .................................. 12

      A.    The Second Prong of the Exemption 4 Test Is Not Satisfied
Because Information Concerning the Identity of Borrowers, the
Amount Borrowed and the Collateral Pledged Is Not "Information
Obtained from a Person" ............................................................. 13

      B.    Information about the Identity of Borrowers, the Amount
Borrowed and the Collateral Pledged Is Not "Privileged or
Confidential" ............................................................................. 14

III.   THE FOIA EXEMPTION FOR INTER- AND INTRA-AGENCY
MEMORANDA DOES NOT APPLY TO THE INFORMATION FOX
BUSINESS IS SEEKING ................................................................17

      A.    The Records Fox Business Has Requested Are Not Subject to the
"Attorney-Work-Product," "Attorney-Client" or "Deliberative
Executive" Privileges That Exemption 5 Has Previously Been Held
to Protect ................................................................................... 17

      B.    The Qualified Privilege for Information That Could Impair the
Government's Commercial Interests Is Inapplicable ..................... 19

i

IV.     THE BOARD'S PURPORTED "POLICY" REASONS FOR WITHOLDING
        THE REQUESTED DOCUMENTS ARE INVALID UNDER THE FOIA
        STATUTE BECAUSE THE ENUMERATED FOIA EXEMPTIONS ARE
        EXCLUSIVE ........................................................................................... 20

V.      RECORDS OF COLLATERAL HELD BY THE FEDERAL RESERVE
        BANKS ARE RECORDS OF THE BOARD FOR PURPOSES OF THE
        BOARD'S FOIA DISCLOSURE OBLIGATIONS ................................... 23

        A.      12 C.F.R. § 261.2(i)(1)(i) ...................................................... 24

        B.      12 C.F.R. § 261.2(i)(1)(ii) ..................................................... 24

        C.      12 C.F.R. § 261.3(a) .............................................................. 24

        D.      The Collateral Records Maintained by FRBs Are "Records of the
                Board" Under the Tax Analysts Test When That Test is Applied in
                Light of the Board's FOIA Regulations ................................... 25

VI.     FOX BUSINESS SHOULD BE AWARDED THE REASONABLE
        ATTORNEY'S FEES INCURRED IN SECURING ITS FOIA RIGHTS ............... 26

        A.      Fox Business is Eligible for an Award of Attorney's Fees ........... 26

        B.      An Award of Attorney's Fees Is Amply Warranted ..................... 26

CONCLUSION ................................................................................................ 29

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................. 10, 11

*Antonelli v. Federal Bureau of Prisons*,
    591 F. Supp. 2d 15 (D.D.C. 2008) ................................................. 11

*Assassination Archives & Research Ctr. v. Central Intelligence Agency*,
    334 F.3d 55 (D.C. Cir. 2003) ....................................................... 11

*Buffalo Evening News, Inc. v. Small Business Administration*,
    666 F. Supp. 467 (W.D.N.Y. 1987) ........................................... 14, 17

*Buckhannon Board and Care Home Inc. v. West Virginia Department of Health
    and Human Resources*,
    532 U.S. 598 (2001) ................................................................. 26

*Continental Stock Transfer & Trust Co. v. Securities and Exchange Commission*,
    566 F.2d 373 (2d Cir. 1977) ..................................................... 14, 15

*Corbin v. Federal Reserve Bank of New York*,
    475 F. Supp. 1060 (S.D.N.Y. 1979) .............................................. 17

*Department of Air Force v. Rose*,
    425 U.S. 352 (1976) ............................................................... 12, 21

*Department of Interior v. Klamath Water Users Protections Ass'n*,
    532 U.S. 1 (2001) ................................................................... 12

*Department of Justice v. Tax Analysts*,
    492 U.S. 136 (1989) ............................................................... 21, 25

*Environmental Protection Agency v. Mink*,
    410 U.S. 73 (1973) ................................................................. 18

*Evans v. United States Office of Personnel Management*,
    276 F. Supp. 2d 34 (D.D.C. 2003) ............................................... 11

*Federal Bureau of Investigation v. Abramson*,
    456 U.S. 615 (1982) ............................................................... 12

*Federal Open Market Committee v. Merrill*,
    443 U.S. 340 (1979) ........................................................... *Passim*

*Government Land Bank v. General Services Agency*,
    671 F.2d 663 (1st Cir. 1992) ...................................................... 20

*Grand Central Partnership v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ........................................ 18

*Halpern v. Federal Bureau of Investigations,*
    181 F.3d 279 (2d Cir. 1999) ........................................ 11

*Hopkins v. United States Department of Housing and Urban Development,*
    929 F.2d 84 (2d Cir. 1991) ........................................ 18

*Inner City Press/Community on the Move v. Board of Governors of the Federal Reserve,*
    463 F. 2d 239 (2d Cir. 2006) .................................... 12, 14

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) ................................................ 21

*Judicial Watch v. Food & Drug Administration,*
    449 F.3d 141 (D.C. Cir. 2006) ...................................... 13

*Kissinger v. Reporters Committee for Freedom of the Press,*
    445 U.S. 136 (1980) ................................................ 11

*Lee v. Federal Deposit Insurance Corp.,*
    923 F. Supp. 451 (S.D.N.Y. 1996) .................................. 11

*Miami Herald Pub. Co. v. Small Business Administration,*
    670 F.2d 610 (5th Cir. 1982) ...................................... 14

*Miscavige v. Internal Revenue Service,*
    2 F.3d 366 (11th Cir. 1993) ....................................... 10

*Nadler v. Federal Deposit Insurance Corp.,*
    92 F.3d 93 (2d Cir. 1996) ...................................... 12, 15

*National Labor Relations Board v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ................................................ 17

*National Parks and Conservation Ass'n v. Morton,*
    498 F.2d 765 (D.C. Cir. 1974) .................................. 14, 15

*New York Public Interest Research Group v. United States*
    *Environmental Protection Agency,*
    249 F. Supp. 2d 327 (S.D.N.Y. 2003) ...................... 10, 11, 12, 16

*Summers v. Department of Justice,*
    140 F.3d 1077 (D.C. Cir. 1998) .................................... 11

*Tax Analysts v. United States Department of Justice,*
    965 F.2d. 1092 (D.C. Cir. 1992) ................................... 27

iv

*Tigue v. United States Department of Justice,*
    312 F.3d 70 (2d Cir. 2002),
    *cert. denied,* 538 U.S. 1056 (2003) ............................................................ 18

*Union of Needletrades, Industrial and Textile Employees, AFL-CIO v.*
    *United States Immigration and Naturalization Service,*
    336 F.3d 200 (2d Cir. 2003) ....................................................................... 26

*U.S. Dep't of Justice v. Reporters Committee For Freedom of Press*,
    489 U.S. 749 (1989) ............................................................................ 11, 12

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ...................................................................... 1

## Statutes and Rules

12 C.F.R. § 261.2(i)(1)(i) ..................................................................... 3, 10, 24

12 C.F.R. § 261.2(i)(1)(ii) .................................................................... 3, 10, 24

12 C.F.R. § 261.3(a) ............................................................................. 3, 10, 24

12 C.F.R. § 261.15 ...................................................................................... 15

12 C.F.R. § 261.16 ...................................................................................... 21

Fed. R. Civ. P. 56 .................................................................................... 8, 29

Fed. R. Civ. P. 56(c) .................................................................................... 10

5 U.S.C. § 551(2) ......................................................................................... 13

5 U.S.C. § 552 ............................................................................................... 1

5 U.S.C. § 552(a)(4)(B) ............................................................................... 11

5 U.S.C. § 552(a)(6)(E)(v)(II) ....................................................................... 6

5 U.S.C. § 552(b) ................................................................................ *Passim*

5 U.S.C. § 552(b)(1) .................................................................................... 22

5 U.S.C. § 552(b)(4) .......................................................................... *Passim*

5 U.S.C. § 552(b)(5) .......................................................................... *Passim*

5 U.S.C. § 552(b)(6) .................................................................................... 22

5 U.S.C. § 552(b)(7) .................................................................................... 22

5 U.S.C. § 552(b)(8) ................................................................................................................. 22

5 U.S.C. § 552(d) ..................................................................................................................... 21

## **Other Authorities**

Treasury's Troubled Assets Relief Program, Emergency Economic Act of 2008,
    Pub. L. No. 110-343 (Oct. 3, 2008) ............................................................................... 16

H. R. Rep. No. 93-876 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6267 ................................... 22

# TABLE OF EXHIBITS

## Declaration of Steven G. Mintz dated March 27, 2009

Exhibit 1        Federal Reserve Letter of November 10, 2008, acknowledging receipt of First FOIA Request

Exhibit 2        Letter of November 18, 2008 to Federal Reserve Board

Exhibit 3        Federal Reserve Letter of January 16, 2009, denying Fox Business's First FOIA Request

Exhibit 4        Second FOIA Request

Exhibit 5        Federal Reserve Letter of November 20, 2008, acknowledging receipt of Second FOIA Request

Exhibit 6        Federal Reserve Letter of December 1, 2008, granting expedited treatment to Second FOIA Request

Exhibit 7        Federal Reserve Letter of December 18, 2008, extending processing time for Second FOIA Request

Exhibit 8        Federal Reserve Letter of January 6, 2009, denying Fox Business's Second FOIA Request

Exhibit 9        Fox Business Complaint

Exhibit 10       Answer

Exhibit 11       Stipulation and Order entered January 26, 2009

Exhibit 12       *Vaughn* index identifying documents withheld from production in response to First FOIA Request

Exhibit 13       *Vaughn* index identifying documents withheld from production in response to Second FOIA Request

## Declaration of Carlotta Cassidy dated March 27, 2009

## INTRODUCTION

The outcome of this action will determine the public's right to know critically important information regarding the health of the United States banking system, quite possibly the most important issue of our day. To that end, Fox News Network, LLC ("Fox News"), owner of the Fox Business Network (collectively "Fox Business"), brought this action under the Freedom of Information Act to obtain records regarding the Federal Reserve System's loans to private institutions during the period between August 8, 2007 and November 17, 2008. Fox Business requested these records – specifically, records of the identity of the institutional borrowers, the amounts they borrowed and the collateral they pledged – because, as a prominent member of the news media, Fox Business has a responsibility to inform the public about the management of programs having a vital effect on the American and global financial system. Defendant, Board of Governors of the Federal Reserve System (the "Board"), has refused to disclose those records in violation of FOIA, shrouding the true state of the financial system with a veil of secrecy at a time when it most requires transparency.

The *existence* of the records is not in dispute. The Board has acknowledged that it possesses records identifying the institutional borrowers and the amounts that they borrowed from the Federal Reserve System, but it has refused to disclose them. [1] The Board relies upon two FOIA exemptions, 5 U.S.C. § 552(b)(4) ("Exemption 4," which is the exemption for confidential commercial and financial information submitted to the government) and 5 U.S.C. § 552(b)(5)("Exemption 5," the exemption for privileged inter- and intra-agency memoranda). However, neither exemption applies.

---

[1]    Specifically, the Board responded to Fox Business's FOIA requests by letters dated January 6, 2008 and January 16, 2008, acknowledging the existence of the documents, but declining to produce them due to purported FOIA exemptions. The Board subsequently identified those documents on a "*Vaughn* index." *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

Exemption 4 is not applicable because the information Fox Business seeks involves only the basic facts of *completed* loans, not the potentially confidential information that the borrowers may have submitted in any underlying loan application documents. Since Exemption 4 only applies to privileged or confidential "trade secrets and commercial and financial information obtained from a person," not information that was generated by the government *itself*, the Board's reliance on Exemption 4 is unavailing.

Likewise, Exemption 5, which covers privileged inter- and intra-agency memoranda, is inapplicable to the facts of this case. That exemption, which is most frequently used to shield documents protected by the attorney-client privilege or the privilege for deliberative material, does not extend to the purely *factual* material about executed loans that Fox Business seeks. Nor does the qualified privilege permitting a "slight delay" in the publication of confidential commercial information generated by the government have any application to the records requested by Fox Business in this case.

Federal agencies *must* disclose records in response to a proper FOIA request *unless* one of the enumerated FOIA exemptions applies. However, even though the Board cannot satisfy any of the exclusive statutory exemptions, it has sought to justify its noncompliance on the basis of a prognostication that exposing the member banks' loan transactions could "stigmatize" those banks, deter them from using the Federal Reserve's lending facilities, and thereby destabilize the banking industry. However, the Board's rationale represents nothing more than an articulation of its own policy concerns. These policy concerns, however valid they may be, do not constitute a recognized, statutory FOIA exemption.

As to the remaining category of requested documents, *i.e.*, records of collateral pledged by the borrowers under the Federal Reserve System's emergency lending programs, the Board

resists disclosure by relying on an untenable distinction between itself and the Federal Reserve Banks ("FRBs"), which implement the Board's liquidity policies and apparently hold the records regarding collateral posted by Federal Reserve borrowers. Once again, the Board's argument is unsustainable. The Board's effort to distance itself from the FRBs for this purpose is unconvincing because the Board's own regulations make it the owner and custodian of the records maintained by the FRBs. 12 C.F.R. §§ 261.2(i)(1)(i), 261.2(i)(1)(ii) and 261.3(a).

Fox Business has established *prima facie* that (a) the Board has records that are responsive to its FOIA requests, (b) the Board is withholding those records and (c) the Board's refusal to disclose is improper under FOIA. For its part, the Board cannot sustain its burden of showing that its refusal to disclose the requested records is justified by any of the statutory FOIA exemptions. Inasmuch as there are no disputed questions of material fact and Fox Business has not, to date, received a single document in response to the "expedited" FOIA requests it made almost five months ago, Fox Business seeks summary judgment on its causes of action. Fox Business respectfully requests that this Court enter an order directing the Board to (a) produce all records that it has purported to withhold under Exemptions 4 and 5 and (b) search for and produce all requested records of collateral in the possession of the FRBs. Finally, Fox Business should also be granted an award of its reasonable attorney's fees.

## FACTS

A.    The Parties

Fox Business is a 24/7 cable news network. It is a member of the news media that disseminates business news and information to the public. Rule 56.1 Stmt. ¶ 2.

The Board is an agency of the United States. Rule 56.1 Stmt. ¶ 3. The Board's responsibilities include leading the nation's monetary policy and supervising the Federal Reserve

System's network of Federal Reserve Banks ("FRBs").  Rule 56.1 Stmt. ¶ 4.   There are twelve

regional FRBs, which operate under the supervision of the Board and are part of the Federal

Reserve System for implementing federal monetary policy.  Rule 56.1 Stmt. ¶ 5.

      B.      The Federal Reserve System's Recent Lending Activities

Among the methods traditionally used by the Federal Reserve System to regulate the

banking and financial system is lending money to private financial institutions, primarily through

the "Discount Windows" operated by the twelve regional FRBs.  Rule 56.1 Stmt. ¶ 7.  Under the

Discount Window system, the Federal Reserve System lends money on a short-term basis to

eligible depository institutions, *i.e.*, commercial banks, savings and loan associations, savings

banks and credit unions.  Rule 56.1 Stmt. ¶ 8.  All loans obtained through the Discount Windows

are secured by collateral.  *Id*.

On or around August 17, 2007, the Federal Reserve System approved temporary changes

to the primary credit program of the Discount Window, allowing the FRBs to extend term credit

up to 30 days.  Rule 56.1 Stmt. ¶ 9.  On or around March 17, 2008, the Board authorized a

change in the primary credit program of the Discount Window, allowing primary credit loans for

terms of up to 90 days.  Rule 56.1 Stmt. ¶ 10.  During the same period, the Board added several

new lending facilities: (a) the Primary Dealer Credit Facility, (b) the Term Securities Lending

Facility, and (c) the Term Auction Facility.  Rule 56.1 Stmt. ¶ 11.  This expansion was

undertaken to relieve liquidity problems in the banking industry and improve the financial

system's stability.  Rule 56.1 Stmt. ¶ 13.  The addition of these facilities enabled the Federal

Reserve to lend to "primary dealers," *i.e.*, banks and securities broker-dealers.  *Id*. at ¶ 14.

The expansion of the Federal Reserve's lending programs led to a dramatic increase in

the amount of loaned public funds.  The average outstanding amounts loaned under all the

Board's lending programs ballooned from approximately $1 million during the week of August

8, 2007 *to more than $188 billion* during the week ending December 31, 2008.  Rule 56.1 Stmt.

¶ 15.  However, despite the circumstances leading up to the dramatic expansion of the Federal

Reserve's intervention in the banking system, as well as persistent questions regarding the

quality of the collateral that the borrowers may have pledged, the Board has steadfastly refused

to disclose the identities of the borrowers, the amounts borrowed and the nature and quality of

the collateral that secures the loans.  Rule 56.1 Stmt. ¶¶ 16, 23, 26, 36, 37, 39, 50-56.  It is *that*

information that Fox Business is seeking.

        C.        <u>Fox Business's FOIA Requests</u>

                1.        The First FOIA Request

On November 10, 2008, Fox Business submitted a FOIA request seeking "the names of

institutions receiving Federal Reserve lending from programs including but not limited to the

following: Regular OMOs; Single-Tranche OMO Program; Discount Window; Term Discount

Window Program; Term Auction Facility; Primary Dealer Credit Facility; Transitional Credit

Extensions; ABCP Money Market Liquidity Facility; Securities Lending; Term Securities

Lending Facility; Term Securities Lending Facility Options Program; and any other Federal

Reserve lending facility not mentioned above" (the "<u>First FOIA Request</u>").  Rule 56.1 Stmt.

¶¶17-18.  The First FOIA Request also sought "an accounting of the collateral provided by these

institutions in exchange for the lending."  Rule 56.1 Stmt. ¶ 19.  The First FOIA Request was

"clarif[ied] and narrow[ed]" in a November 18, 2008 letter stating that Fox Business was seeking

only "the names of institutions receiving Federal Reserve lending pursuant to any Federal

Reserve lending facility" and "an accounting of the collateral provided by these institutions,"

with the request limited to "all Federal Reserve lending that occurred between August 8, 2007 and November 17, 2008." Rule 56.1 Stmt. ¶ 21.

Fox Business did not hear from the Board again regarding the First FOIA Request until several weeks later. Finally, on January 16, 2009 – which was *after* Fox Business had filed the complaint in this action – the Board denied the request.

### 2. The Second FOIA Request

On November 18, 2008, Fox Business submitted a second FOIA request, which this time included an application for expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) (the "Second FOIA Request"). Rule 56.1 Stmt. ¶ 27. The Second FOIA Request, which was limited to the months of September and October 2008, sought documents identifying "all institutions that have participated in any Fed[eral reserve] lending program, including, but not limited to, Regular OMO, Single Tranche OMO, Discount Window, Term Discount Window Program, Term Auction Facility, Primary Dealer Credit Facility, Transitional Credit Extensions, ABCP Money Market Fund Liquidity Facility, Securities Lending, Term Securities Lending Facility, and the Term Securities Lending Facility Options Program" ("Item No. 1"). Rule 56.1 Stmt. ¶ 28. The Second FOIA Request also asked for records showing (a) the amounts borrowed by each named institution and (b) the collateral pledged by each institution ("Item No. 2"). Rule 56.1 Stmt. ¶29. Finally, Fox Business requested information about "the collateral held by the Fed at the close of business on November 14, 2008 . . . [including] information sufficient to match the institutions with the collateral they pledged" ("Item No. 3"). *Id.* With respect to its request for expedited processing, Fox Business noted that it is a member of the news media as defined in 12 C.F.R. § 261.2(l) and that its "requests concern matters of current exigency to the American public." Rule 56.1 Stmt. ¶ 31.

D.    The Board's Response

After ostensibly granting Fox Business "expedited processing" on December 1, 2008 for the Second FOIA Request, the Board nevertheless waited almost five weeks before responding to this request.  Rule 56.1 Stmt. ¶¶ 33-34.

In a letter dated January 6, 2009, the Board acknowledged that its staff had searched for and found documents directly responsive to Item Nos. 1 and 2 of the Second FOIA Request but, citing Exemptions 4 and 5, advised that it would not disclose those records:

> [The] staff [] searched Board records and located documents that are responsive, in part, to items 1 and 2 of [Fox Business's] request.  These consist of daily reports (averaging approximately 90 pages per day) for September and October 2008, and November 14, 2008 (the time periods and date identified in your request) with information on the [Discount Window], TAF, PDCF, AMLF, CPFF, AIG and [Bear Stearns] facilities.  Together the reports identify participants by facility, the originating Federal Reserve Bank district, individual loan amounts per borrower, and origination and maturity dates.  . . . .  I have determined that this information contains or consists of the following kinds of exempt information: trade secrets and commercial or financial information obtained from a person and privileged or confidential; and inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.  Such information will be withheld from you under authority of exemptions 4 and 5 of the Act, respectively, 5 U.S.C. §§ 552(b)(4) and (b)(5).[2]

*See* Declaration of Steven G. Mintz, Esq. ("Mintz Decl.") at Exhibit 8, p 4.

Finally, with respect to Item No. 3 of the Second FOIA Request for "records sufficient to identify all collateral held . . . at the close of business on November 14, 2008," the Board stated that its "staff searched Board records and made suitable inquiries but did not locate any information within the control of the Board that is responsive to [the] request."  Rule 56.1 Stmt. ¶ 38.

---

[2]    The Board went on to represent that "no reasonably segregable nonexempt information was found" among those documents.

In addition to invoking FOIA Exemptions 4 and 5, the Board's January 6, 2009 letter contained a lengthy discussion of the agency's policy reasons for refusing to provide information about individual lending transactions. Rule 56.1 Stmt. ¶ 39. Specifically, the Board stated:

> While the Board strongly supports transparency . . . , the Board also has a legal obligation . . . to consider the significant adverse consequences that release of responsive information would have on the effectiveness of Federal Reserve Bank lending activity in addressing liquidity strains of financial markets and institutions and the potential adverse effects on the economy now and in the future. . . . .
>
> Certain of the emergency facilities have been designed and implemented in a manner intended to mitigate the stigma associated with resort to [Discount Window] lending. This has been especially important considering the extraordinary liquidity conditions in the market and the crucial role of these facilities in addressing those conditions. Nevertheless, anecdotal evidence suggests that material concerns remain about public disclosure of borrowers' reliance on these facilities. The effectiveness of these facilities depends critically on the willingness of individual borrowers to utilize them. . . .
>
> . . . Thus, notwithstanding calls for enhanced transparency, the Board must protect against the substantial, multiple harms that might result from disclosure. In its considered judgment and in view of the current circumstances, it would be a dangerous step to release this otherwise confidential information.

*See* Mintz Decl. at Exhibit 8, pp. 4-5.

E.    Fox Business Initiates a FOIA Action

On January 12, 2009, Fox Business filed the complaint in this action, challenging the Board's failure to comply with its disclosure obligations under FOIA. The complaint demands declaratory relief as well as an injunction requiring the Board immediately to produce the records sought in the First and Second FOIA Requests.[3] The Board filed its answer on February 19, 2009. The Board once again acknowledged in its answer that responsive records exist, but

---

[3]    On January 15, 2009, Fox Business submitted an order to show cause in connection with a contemplated motion for a preliminary injunction. Following a conference with the Court on January 22, 2009, Fox Business withdrew its motion for a preliminary injunction with the understanding that one or both parties would bring the issues before the Court through summary judgment motions pursuant to Fed. R. Civ. P. 56.

contended that such records "were withheld on the basis of exemptions contained in the FOIA." (Answer ¶10).

The Board again asserted its FOIA exemptions in the *Vaughn* indexes that it submitted to Fox Business on February 19, 2009. Rule 56.1 Stmt. ¶ 47. In these indexes, the Board admitted that it has "Origination Reports," "Term Reports" and "Emergency Credit Reports" containing facts about recent loan transactions totaling approximately 5912 pages responsive to the First FOIA Request and 2998 pages responsive to the Second FOIA Request (with some overlap). Rule 56.1 Stmt. ¶ 48. According to the Board, the Reports were "prepared using raw data provided to Board staff on a daily basis by the Federal Reserve Banks (which obtained and derived the information from records of transactions with the borrowing institutions). Rule 56.1 Stmt. ¶ 49. Although the Reports are plainly responsive to Fox Business's FOIA Requests, the Board's *Vaughn* indexes claim, among other things, that those Reports are exempt from disclosure under FOIA either because they contain non-segregable, confidential "commercial or financial information" or because they consist of non-disclosable intra- or inter-agency memoranda containing "sensitive information, not otherwise available, immediate release of which would significantly harm the Government's monetary functions or commercial interests." Rule 56.1 Stmt. ¶ 50.

The parties had a Court-ordered face-to-face meeting on February 25, 2009 to narrow and clarify the issues between them. Rule 56.1 Stmt. ¶ 51. During this meeting, the Board made it clear that it has no intention of disclosing *any* information about specific loans that were made by the Federal Reserve System within the relevant time frame. Rule 56.1 Stmt. ¶ 53. In addition, the Board took the position that the requested records of pledged collateral are not "records of the Board" subject to the Board's FOIA obligation to search and/or disclose because the records

in question are generated and maintained by the *FRBs*, as opposed to the Board. Rule 56.1 Stmt. ¶ 56. Significantly, the Board confirmed that records concerning the collateral pledged to the Federal Reserve Banks do, in fact, exist. *See* Rule 56.1 Stmt. at ¶ 55. As we demonstrate below, three Federal Reserve regulations make plain that those documents are records of the Board. *See* Point V, *infra*, citing 12 C.F.R. §§ 261.2(i)(1)(i), 261.2(i)(1)(ii) and 261.3(a).

The issues are now ripe for summary judgment.

## ARGUMENT

### POINT I

### FOX BUSINESS IS ENTITLED TO JUDGMENT ON ITS CLAIMS UNDER THE STANDARDS GOVERNING FOIA DISPUTES

A.    Summary Judgment is the Proper Remedy in FOIA Cases Which Present Only Questions of Law

Summary judgment under Rule 56 is appropriate where the pleadings, the discovery material and the submitted proof demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is particularly well-suited to FOIA disputes that involve purely legal questions regarding the scope of statutory exemptions and the agency's search obligation. Indeed, as this Court previously observed, summary judgment is the *preferred* procedural vehicle for resolving FOIA disputes. *See New York Public Interest Research Group ("NYPIRG") v. United States Environmental Protections Agency*, 249 F. Supp. 2d 327, 331 (S.D.N.Y. 2003) (Hellerstein, J.) (citing *Miscavige v. Internal Revenue Service*, 2 F.3d 366, 369 (11th Cir. 1993)); *American Civil Liberties Union ("ACLU") v. Department of Defense*, 389 F. Supp. 2d 547, 551 (S.D.N.Y. 2005).

As in any summary judgment motion, when all reasonable inferences have been drawn against the movant and it is apparent that there are no genuine issues of material fact, summary judgment must be granted. *Liberty Lobby*, 477 U.S. at 249-50. Under these standards, Fox Business is unquestionably entitled to be awarded summary judgment on its FOIA claims.

B.    Fox Business Has Satisfied its Burden of Proof and Is Therefore Entitled to Summary Judgment on Its FOIA Claims

In a case arising under FOIA, the requester establishes a *prima facie* entitlement to relief by showing that (a) agency records (b) were improperly (c) withheld. *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980); *Antonelli v. Federal Bureau of Prisons*, 591 F. Supp. 2d 15, 24 (D.D.C. 2008).

FOIA requires district courts to conduct a *de novo* review of any challenge to a federal agency's withholding of agency records, including the agency's assertion that requested material is exempt from disclosure. 5 U.S.C. § 552(a)(4)(B); *Halpern v. Federal Bureau of Investigations*, 181 F.3d 279, 287-288 (2d Cir. 1999); *NYPIRG, supra,* 249 F. Supp. 2d at 331; *Evans v. United States Office of Personnel Management*, 276 F. Supp. 2d 34, 37 (D.D.C. 2003); *Lee v. Federal Deposit Insurance Corp.,* 923 F. Supp. 451, 453 (S.D.N.Y. 1996). The *de novo* review demanded by section 552(a)(4)(B) requires the court to determine whether the agency has demonstrated that the documents requested either are not "agency records" in the first instance, or are otherwise exempt from disclosure under one of the enumerated FOIA exemptions listed in section 552(b). *Assassination Archives & Research Ctr. v. Central Intelligence Agency,* 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Department of Justice,* 140 F.3d 1077, 1080 (D.C. Cir. 1998)); *Evans*, 276 F. Supp. 2d at 37. The consequence of the *de novo* review requirement is that the agency's view on the applicability of exemptions is ***not*** entitled to the deference that would otherwise attach to agency determinations. *See U.S. Dep't of Justice v.*

*Reporters Committee For Freedom of Press*, 489 U.S. 749, 755 (1989)(distinguishing *de novo* review under FOIA from review of other agency action under the Administrative Procedure Act).

With respect to the specific "limited exemptions" provided for in the statute, the courts are directed to apply them in an manner that "do[es] not obscure the basic policy that disclosure, not secrecy, is the dominant objective of [FOIA]." *Department of Air Force v. Rose,* 425 U.S. 352, 361 (1976); *accord, Department of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 7-8 (2001). "Because the basic objective behind FOIA is disclosure, not secrecy, the nine [FOIA] exemptions are to be 'narrowly construed.'" *NYPIRG,* 249 F. Supp. 2d at 331 (quoting *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 630 (1982)).

### POINT II

### THE FOIA EXEMPTION FOR CONFIDENTIAL COMMERCIAL AND FINANCIAL INFORMATION DOES NOT APPLY TO THE INFORMATION FOX BUSINESS IS SEEKING

In refusing to provide information about individual lending transactions, the Board has relied heavily on Exemption 4, which exempts from disclosure "trade secrets and commercial and financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 4 applies only if ***all three*** elements of a tri-partite test are satisfied: (1) the information sought must be a trade secret or "commercial or financial" in character; (2) it must have been "*obtained from a person*;" and (3) it must be "privileged or confidential." *E.g.*, *Inner City Press/Community on the Move v. Board of Governors of the Federal Reserve*, 463 F.3d 239, 244 (2d Cir. 2006); *Nadler v. Federal Deposit Insurance Corp.*, 92 F.3d 93, 95 (2d Cir. 1996).

Neither Exemption 4's specific language nor the case law applying it justifies withholding what the Board has described as "transaction level" information, *i.e.*, who borrowed

money and how much was borrowed. Although it is undisputed that the withheld information is "commercial or financial" in nature and, consequently, the first prong of Exemption 4's tripartite test is satisfied, the Board does not satisfy its burden to show that the second and the third prongs are applicable in this situation.

A.    The Second Prong of the Exemption 4 Test Is Not Satisfied Because Information Concerning the Identity of Borrowers, the Amount Borrowed and the Collateral Pledged Is Not "Information Obtained from a Person"

It is well established that information generated by the federal government is not information "*obtained from a person*." *Federal Open Market Committee v. Merrill ("FOMC")*, 443 U.S. 340, 360 (1979); *see also Judicial Watch, Inc. v. Food & Drug Administration*, 449 F.3d 141, 148 (D.C. Cir. 2006)("[u]nlike many other types of information subject to an agency's control, materials implicating Exemption 4 are generally not developed within the agency"; "[i]nstead, [the agency] must procure commercial information from third parties either by requirement or request*"*). Indeed, "person" is defined in 5 U.S.C. § 551(2) as "an individual, partnership, corporation, association or public or private organization *other than an agency*" (emphasis added). Thus, by definition, information created by or obtained through an agency's processes can never be deemed information "obtained from a person." *Id.*

The information Fox Business seeks is not  information "obtained from a person" within the meaning of 5 U.S.C. § 552(b)(4) because it involves only the ultimate facts emerging from the Federal Reserve System's lending process, *i.e.*, the names of institutional borrowers, the amounts they have borrowed and the collateral they have pledged. Fox Business has ***not*** requested information that the Federal Reserve System obtained from the ***borrower***, such as the borrowing institutions' balance sheets, the value and character of the assets they hold or their

creditworthiness.  *Cf. Inner City Press*, 463 F.3d at 244-48 (applying Exemption 4 to information contained in bank merger application submitted to the Board).

*Buffalo Evening News, Inc. v. Small Business Administration* is directly on point because the *Buffalo Evening News* court held that Exemption 4 did not authorize the Small Business Administration to withhold records identifying "individual loan amounts, . . . outstanding balances and payment, collection, or discharge status," as that information had been generated by the government and "in no way implicate[d] any of the financial information provided by the borrowers to the government."  666 F. Supp. 467, 469 (W.D.N.Y. 1987).  *Accord*, *Miami Herald Pub. Co. v. Small Business Administration*, 670 F.2d 610, 615 (5th Cir. 1982) (FOIA exemption not implicated where requested records did not involve borrowers' information supplied in support of SBA loan applications).

Just as in *Buffalo Evening News*, the information Fox Business requested – *i.e.*, the identity of institutions that have borrowed money from the Federal Reserve System, the amounts they have borrowed and the collateral they have pledged – are all facts generated in the lending process itself and maintained by the FRBs.  Accordingly, the information Fox Business seeks does not fall within Exemption 4's protective cloak.

> B.    Information about the Identity of Borrowers, the Amount Borrowed and the <u>Collateral Pledged Is Not "Privileged or Confidential"</u>

The information that Fox Business seeks also does not satisfy the third prong of the test for Exemption 4, *i.e.*, that the information is "privileged and confidential."  Under the test articulated in *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974), and adopted by the Second Circuit in *Continental Stock Transfer & Trust Co. v. Securities and Exchange Comm'n*,  566 F.2d 373, 375 (2d Cir. 1977), information is "privileged and confidential" if "'its disclosure would have the effect either '(1) of impairing the government's

14

ability to obtain . . . necessary information . . . in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information is obtained.'" *Nadler,* 92 F.3d at 233 (quoting *Continental Stock Transfer*, 566 F.2d at 375 (2d Cir. 1977)).

As to the first element of the *National Parks* test, there is no risk in this situation of impairing the government's ability to obtain "necessary information" from institutions that approach the Federal Reserve System for credit through the Discount Window or other System facilities. As noted above, Fox Business is not seeking any information supplied by the borrower to the Federal Reserve.

Moreover, in its correspondence denying Fox Business's FOIA requests, the Board failed to identify any positive legal obligation requiring any part of the Federal Reserve System to maintain as confidential either the identity of a borrower, the amounts borrowed or the particular collateral that the FRBs might require to secure a given loan. Nothing in the statute governing advances to member banks stipulates that such information will not be available to the public, under FOIA or otherwise. 12 U.S.C. § 347b(a). Nor has the Board advised Fox Business that any borrower has formally requested that its borrowing or its posting of collateral be treated confidentially pursuant to 12 C.F.R. § 261.15. Moreover, the Board has not informed Fox Business whether it has notified any affected private institutions of Fox Business's FOIA Request, as the Board's own regulations would have required it to do, *i.e.*, if any such institutions had, in fact, requested confidential treatment of the subject information in the first instance. 12 C.F.R. § 261.16(b). It is likely, therefore, that no private institutions have yet been contacted or, if they have been, they have not raised any objections to disclosure. *See also* 12 C.F.R. § 261.16(g)(1), (2) (Board required to advise borrowing institutions of Fox Business's lawsuit and to advise Fox Business if any borrower seeks to enjoin disclosure in a "reverse-FOIA" action).

15

In fact, no borrower has filed a so-called "reverse-FOIA" action or otherwise intervened to block the release of the information that Fox Business has requested.

As to the second part of the test, *i.e.*, the competitive-harm prong, the Board's reliance on the potential "stigma" to the borrowing institutions if the information is disclosed is unavailing. Borrowers who would be eligible to draw funds at the Discount Window are among the same type of institutions that have admitted – indeed, trumpeted – their crippling liquidity problems by publicly pleading for money from the Treasury Department under the Troubled Asset Relief Program ("TARP"), Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343.  The Treasury Department has already publicly disclosed on its website the identity of the recipients of TARP money.  *See* http://www.treas.gov/initiatives/eesa/agreements/index.shtml.  The Board has never explained how the distressed condition of those institutions could once more become a secret when they approach the Discount Window for short-term liquidity relief.

Moreover, the public's awareness of the financial condition of the nation's banks through the news media has already eclipsed any theoretical or real "stigma" that might arise from disclosure of Federal Reserve borrowing by those same banks that took place *between four and nineteen months ago*, particularly in light of the rapidly changing landscape in the financial services industry.  Simply put, the information is too stale to be of any use to a competitor.  But withholding this information will stifle further national debate.

Furthermore, as this Court recognized in *NYPIRG,* even a "voluntary submitter may have sufficient external incentives" to continue doing business with the government "despite the prospect of public disclosure."  249 F. Supp. 2d at 336.  This is arguably true in the case of the financial institutions that seek the assistance of the Federal Reserve's lending programs to assist them with their liquidity problems.  The Federal Reserve is the quintessential "lender of last

16

resort" for banks with short-term liquidity problems and can offer credit on terms that the banks

can obtain nowhere else. *Corbin v. Federal Reserve Bank of New York*, 475 F. Supp. 1060, 1063

(S.D.N.Y. 1979). Logically, the prospect that the three items of information sought by Fox

Business might be reported can hardly change the borrowing calculus for a bank that has

nowhere else to go. *Buffalo Evening News*, 666 F. Supp. at 471 (adopting FOIA requester's

argument that nondisclosure cannot be justified by fear that borrowers will avoid use of

government lending program where there was "virtually no equivalent alternative source" for the

same type of loans).

**POINT III**

**THE FOIA EXEMPTION FOR INTER- AND INTRA-AGENCY
MEMORANDA DOES NOT APPLY TO THE INFORMATION
FOX BUSINESS IS SEEKING**

The Board has also sought to shield the information that Fox Business has requested on

the basis of Exemption 5, *i.e.*, "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency." 5

U.S.C. § 552(b)(5). However, the undisputed facts in the record reveal that Exemption 5 has no

application to the documents Fox Business has requested.

A. The Records Fox Business Has Requested Are Not Subject to the "Attorney-
Work-Product," "Attorney-Client" or "Deliberative Executive" Privileges That
Exemption 5 Has Previously Been Held to Protect

While the full extent of Exemption 5's coverage has not been definitively resolved, the

three privileges that have clearly been recognized in this context are the privileges for reports

and working papers that constitute attorney work product, that reflect attorney-client

communications and that are subject to the "executive" privilege for pre-decisional deliberations.

*E.g.*, *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975);

17

*Environmental Protection Agency v. Mink*, 410 U.S. 73 (1973); *Tigue v. United States Department of Justice*, 312 F.3d 70, 76 (2d Cir. 2002), *cert. denied*, 538 U.S. 1056 (2003).

Here there is no colorable claim that the documents in question are covered by the attorney-client privilege or the attorney work product doctrine, since the information in question was admittedly prepared by Board staffers from material supplied by the FRBs and there is no indication that *any attorney* was involved in the process, much less that the indicia of confidential attorney-client communications or attorney work product were present. Nor is there any realistic claim that the reports of Federal Reserve lending that the Board is withholding qualify for protection under the privilege for deliberative executive material.

To qualify as "deliberative executive" material, the document in question must be "predecisional" and deliberative. *Tigue*, 312 F.3d at 76. This privilege does not, as a general matter, cover "purely factual" material. *Grand Central Partnership v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999); *Hopkins v. United States Department of Housing and Urban Development*, 929 F.2d 84, 85 (2d Cir. 1991). Moreover, "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery." *Mink*, 410 U.S. at 87-88.

According to the Board's own *Vaughn* indexes, the material it is seeking to shield from disclosure consists wholly of compilations of "raw data provided to the Board staff on a daily basis by the Federal Reserve Banks," such as the names and types of the borrowing institutions, the Federal Reserve Districts extending the loans, the loan amounts, the maturity dates, and the facility extending the credit. (*See* Mintz Decl. at <u>Exhibits</u> 12 and 13). There is no **hint** in the Board's description of any deliberative content, such as policy proposals, opinions or internal

deliberations within the documents themselves.  Accordingly, insofar as Exemption 5 protects

deliberative material, it is inapplicable here.

> B.      The Qualified Privilege for Information That Could Impair the
>         Government's Commercial Interests Is Inapplicable

The Supreme Court emphasized in its decision in *FOMC* that "a claim that privilege other

than executive privilege or the attorney privilege must be viewed with caution."  443 U.S. at 355.

Nevertheless, in recognition that *immediate* release of some information could compromise the

government's commercial interests in a pending transaction, the Supreme Court in *FOMC*

recognized a *qualified* privilege within Exemption 5 "for confidential commercial information, at

least to the extent that this information is generated by the Government itself *in the process*

*leading up to awarding a contract*."  443 U.S. at 360 (emphasis added).

In denying Fox Business's FOIA requests, the Board did not explicitly rely upon *FOMC*

as authority for its decision.  However, the Board borrowed language from the *FOMC* decision

in its two *Vaughn* indexes, repeating *verbatim* that Fox Business's FOIA requests covered

"sensitive information, not otherwise available, immediate release of which would significantly

harm the Government's monetary functions or commercial interests."  (*See Vaughn* indexes,

annexed to the Mintz Declaration at Exhibit 12 and Exhibit 13; *and see FOMC*, 443 U.S. at 363).

However, the qualified privilege for confidential commercial information generated by the

Government is completely out of place in this case.

The Supreme Court in *FOMC* unmistakably confined the scope of that privilege to

instances where "the Government will be placed at a competitive disadvantage or . . . the

consummation of [a government] contract may be endangered."  *Id.* at 360.  Critically, the

*FOMC* Court held that "the rationale for [the *FOMC* privilege] expires as soon as the contract is

awarded or the offer withdrawn."  *Id.*  (emphasis added).

The Board's subtle reliance upon *FOMC's* qualified privilege for sensitive commercial information generated by the Government is a classic red herring. The records that Fox Business has requested concern loans *that have already been made*. The Board simply cannot advance a serious argument that disclosure could conceivably place the Federal Reserve System "at a competitive disadvantage" or could "endanger the consummation" of the particular loans. *See Government Land Bank v. General Services Agency*, 671 F.2d 663, 665 (1st Cir. 1992) (appraisal reports for property listed by General Services Agency protected from disclosure under Exemption 5, *but only until property is sold*).

Moreover, to qualify for an exemption under FOMC, the agency must show not only that immediate disclosure "would significantly harm the Government's monetary functions or commercial interests," but also that any delay in disclosure would be "slight." *FOMC, supra,* 443 U.S. at 361. Manifestly, a delay of more than four months (and up to nineteen months) does not meet that criterion.

*A fortiori*, this Court should reject the Board's attempt to rely upon Exemption 5 in this case, which seeks to justify withholding disclosure *indefinitely*.

## POINT IV

**THE BOARD'S PURPORTED "POLICY" REASONS FOR WITHOLDING THE REQUESTED DOCUMENTS ARE INVALID UNDER THE FOIA STATUTE BECAUSE THE ENUMERATED FOIA EXEMPTIONS ARE EXCLUSIVE**

Since neither of the two enumerated FOIA exemptions cited by the Board applies to Fox Business's FOIA request, the inquiry should end right there and the Court should direct the Board to disclose the requested information. However, even though no statutory exemption applies in this case, the Board seeks to rationalize its denial of Fox Business's request based upon policy considerations outside the statute. Specifically, the Board speculates about

economic harm that it believes might result if it exposes the past commercial practices of banks that use the Discount Windows and other emergency liquidity facilities. *See* January 6, 2009 Letter, Mintz Decl. at <u>Exhibit 8</u>, p. 4-5. Although the Board has cited the present market environment as one of the grounds for its concern, it is clear from the Board's rationale that it would oppose disclosure even in less economically stressed times. In either case, the Board's stated reason for withholding records must be rejected because it does not rest upon any exemption that *Congress* wrote in the statute.

FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., p. 3 (1965)). "The Act's 'basic purpose reflected a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language."'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting *Rose*, 425 U.S. at 360-61). Section 552(b), the exemption section of the statute, "is part of this scheme and represents the congressional determination of the types of information" that the executive branch may keep confidential. S. Rep. No. 813, p. 3. In other words, "[t]he Act's broad provisions favoring disclosure, coupled with the specific exemptions, reveal and present the 'balance' Congress has struck." *John Doe Agency*, 493 U.S. at 153. Accordingly, the nine specific exemptions delineated in the statute are both *exclusive* and narrowly construed. 5 U.S.C. § 552(d); *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 151-56 (1989); *Rose*, 425 U.S. at 361.

In its January 6, 2009 letter denying Fox Business's FOIA request, the Board expressed a need to balance calls for "enhanced transparency" against the "dangerous" consequences of that

same transparency.  (*See* Mintz Decl. at <u>Exhibit 8</u>, p. 4-5).  Put another way, the Board's position

is that the markets are better off not knowing who has used its emergency lending facilities, how

much those borrowers have drawn down and the quality of their collateral.  The Board's position

is irreconcilable with FOIA.

Fox Business recognizes the Board's concerns about the effect that disclosure could have

on the borrowing banks.  But the Board's position runs directly counter to the fundamental

purpose of FOIA: "'[to] promote honest and open government and to assure the existence of an

informed citizenry [in order] to hold the governors accountable to the governed,'" *ACLU*, 389 F.

Supp.  2d at 551 (S.D.N.Y. 2005)(Hellerstein, J.) (quoting *National Council of La Raza v.

Department of Justice*, 411 F.3d 350, 355 (2d Cir. 2005)).  Although FOIA explicitly authorizes

nondisclosure where necessary to protect classified "national defense" and "foreign policy"

secrets, certain "personal privacy" interests and certain "law enforcement" interests, 5 U.S.C.

§ 552(b)(1), (6), (7), it does not contain similar provisions for concealing information that the

Board of Governors fears *may* disrupt confidence in the banking system.  Congress could have

written such an exemption, but it did not.

For example, Congress did enact 5 U.S.C. § 552(b)(8), which exempts from disclosure

information obtained in "examination, operating, or condition reports" prepared in the course of

an agency's supervision of a financial institution.   In fact, the House Report specifically noted

that private financial data, "if indiscriminately disclosed, [could] cause great harm."

H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966).  Evidently, Congress knew how and when to

exempt data regarding financial institutions from disclosure under FOIA if it wanted to.  But the

Federal Reserve does not claim an exemption under 5 U.S.C. § 552(b) (8) – nor could it – and no

other FOIA exemption authorizes the Federal Reserve to withhold agency records out of a fear of causing a "run on the bank."

Likewise, neither FOIA nor the Federal Reserve Act contains an exemption authorizing any branch of the Federal Reserve System to withhold information whose disclosure might interfere with the "efficiency" of the agency's operations, or that the agency deems not to be in the "public interest." *See FOMC*, 443 U.S. at 354 (rejecting agency "efficiency" and "public interest" expansion of Exemption 5 as incompatible with prompt disclosure and legislative history). Thus, whether or not they have merit from a policy standpoint, the Board's arguments about the benefits of continued secrecy do not provide a legally viable ground for denying Fox Business access to the transactional records it seeks.

## POINT V

### RECORDS OF COLLATERAL HELD BY THE FEDERAL RESERVE BANKS ARE RECORDS OF THE BOARD FOR PURPOSES OF THE BOARD'S FOIA DISCLOSURE OBLIGATIONS

As part of its FOIA request, Fox Business sought records showing the collateral pledged by each institutional borrower as well as the collateral held by the Federal Reserve System at the close of business on November 14, 2008. In response, the Board claimed that apart from a few illustrative references to collateral in various internal reports (which are being withheld for other reasons), the information Fox Business seeks is held by the FRBs and, consequently, the Board has no obligation to search for or disclose such records. The problem with the Board's argument is that it is inconsistent with the Board's own regulations, which make the Board the owner and custodian of most records created and held by the FRBs. Indeed, these regulations speak for themselves.

23

A.    12 C.F.R. § 261.2(i)(1)(i)

12 C.F.R. § 261.2(i)(1)(i) states that:

> Records of the Board include . . . all information coming into the possession and under the control of the Board, any Board member, *any Federal Reserve Bank*, or any officer, employee or agent of the Board *or of any Federal Reserve Bank*, in the performance of functions for or on behalf of the Board that constitutes part of the Board's official files (emphasis added).

On the face of the regulation, even if some of the documents sought by Fox Business were located in the files of a Federal Reserve Bank (as opposed to the Board), they would nevertheless be "Records of the Board" and subject to disclosure under FOIA.

B.    12 C.F.R. § 261.2(i)(1)(ii)

This regulation states that "Records of the Board include . . . [records ] maintained for administrative reasons in the regular course of business in official files in any division or office of the Board *or any Federal Reserve Bank* in connection with the transaction of any official business" (emphasis added).

There should be no doubt that loans made by FRBs – and their acceptance of the collateral associated with such loans – constitute the transaction of the FRBs' "official business." FRBs are authorized to make secured short-term loans to member banks under the Board's supervision.  12 U.S.C. § 347b(a).  Loan and collateral records maintained by the FRBs are, therefore, squarely within the class of records described as "records of the Board" under  12 C.F.R. § 261.2(i)(1)(ii).  Hence, the Board is obligated to search such records for the documents Fox Business has requested and produce any records that are non-exempt under FOIA.

C.    12 C.F.R. § 261.3(a)

12 C.F.R. § 261.3(a) makes the Board's Secretary the "official custodian of all Board records, *including records that are in the possession or control of . . . any Federal Reserve*

24

*Bank*." This provision effectively refutes any claim the Board might make that it has neither "obtained" nor continues to have "control" of the FRBs' collateral records.

> D.    The Collateral Records Maintained by FRBs Are "Records of the Board" Under the *Tax Analysts* Test When That Test is Applied in Light of the Board's FOIA Regulations

In addition to the regulatory guidance supplied above, the Supreme Court has articulated a two-part test, holding that "agency records" are those that are (1) either created or obtained by an agency and (2) under agency control at the time of the FOIA request. *Department of Justice v. Tax Analysts,* 492 U.S. at 144-45. Under this test, it is clear that the records Fox Business has requested are "agency records" since the Board's own FOIA regulations give it such ownership and control of the FRBs' lending records *ab initio*. Thus, the requested records were both "obtained by" the Board and "under [the Board's] control at the time" that Fox Business made its FOIA requests.

Moreover, the Board contradicts itself when it argues that records maintained by the FRBs are not "agency records" when it simultaneously claims that the reports it compiles from FRB data and, in some cases, circulates to one or more of the FRBs, are intra- or inter-agency reports. In this connection, there is no disputed issue of fact that the requested records concerning collateral exist and are in the possession of the FRBs. See 56.1 Stmt. at ¶ 55. Rather, the Board simply hides behind the fiction that the documents are not within the control of the *Board*. Such a shell game cannot be tolerated, particularly on matters of disclosures that are so critical to the public debate on the Federal Reserve's System's monetary and fiscal policies. In sum, this Court should reject the Board's effort to hide behind the distinctions between itself and its implementing arms, *i.e.*, the FRBs, as a means of circumventing its obligation to disclose

information about the collateral that has been given in exchange for Federal Reserve System loans.

## POINT VI

### FOX BUSINESS SHOULD BE AWARDED THE REASONABLE ATTORNEY'S FEES INCURRED IN SECURING ITS FOIA RIGHTS

A.    <u>Fox Business is Eligible for an Award of Attorney's Fees</u>

Pursuant to FOIA's fee shifting provision, a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 522(a)(4)(E). A party to a FOIA litigation "substantially prevail[s]" and is entitled to recover its reasonable attorney's fees if it has brought about a material change in the legal relationship of the parties by having been awarded some relief, either through a judgment on the merits or a court-ordered consent decree. *Union of Needletrades, Industrial and Textile Employees, AFL-CIO, CLC v. United States Immigration and Naturalization Service*, 336 F.3d 200 (2d Cir. 2003) (citing *Buckhannon Board and Care Home Inc. v. West Va. Dep't of Health and Human Resources*, 532 U.S. 598 (2001)).

Under this standard, Fox Business is unquestionably eligible for an award of its reasonable attorney's fees if it prevails on any part of this motion. The motion seeks summary judgment on the merits of Fox Business's causes of action for declaratory and injunctive relief under FOIA. A disposition of this motion in favor of Fox Business on any of its causes of action would result in both a material change in the parties' relationship and, as required by *Needletrades*, a judgment on the merits. Thus, the essential element of eligibility is established.

B.    <u>An Award of Attorney's Fees Is Amply Warranted</u>

In addition to determining a litigant's eligibility of attorney's fees under 5 U.S.C. § 522(a)(4)(E), the Court must consider whether an award of such fees is warranted. The factors

26

that are ordinarily considered in making that determination – *i.e.*, (1) benefit to the public; (2) commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding – all militate in favor of Fox Business here. *E.g.*, *Tax Analysts v. United States Department of Justice*, 965 F.2d 1092, 1092-94 (D.C. Cir. 1992).

The benefit to the public from the disclosure Fox Business has sought is patently obvious. The need to provide the public with the information about the use of Federal Reserve lending programs is indisputably urgent in light of the ongoing crisis in the financial markets, which is widely viewed as having been triggered by excesses in the banking and financial services industries. Unprecedented amounts of government capital have been pumped into the financial sector of the economy, with virtually no government oversight and even less public disclosure of the terms of the government's lending. Although the Federal Reserve has loaned unprecedented sums to private entities, there has been no public disclosure of the collateral that has been taken to secure the Federal Reserve System's loans or of the conditions (if any) that have been imposed. Nor can the media report yet whether borrowers have posted as collateral the same sort of toxic collateralized debt obligations and subprime debt that caused the meltdown in the banking system in the first place. Facts concerning the Federal Reserve's handling of its lending programs during this period of great financial turmoil would furnish invaluable information and would thereby advance the national debate.

With respect to the second and third factors, which are generally considered in tandem, *id.* at 1095, Fox Business's interest in this dispute is rooted wholly in its role as a member of the news media whose role is to investigate and inform the public. Consequently, its interest in the litigation is directly related to its primary mission of serving as the eyes and ears of the public, while any "commercial benefit" it may enjoy is, at best, tangential and attenuated. Manifestly,

Fox Business's pursuit of its rights under FOIA goes well beyond a mere private concern and, as such, warrants an award of attorney's fees.

Finally, as to the fourth factor, the Board's refusal to disclose even a single scrap of paper in response to Fox Business's two FOIA Requests is emblematic of the unreasonableness of its posture. As is discussed in detail above, the Board has attempted to use Exemptions 4 and 5 to justify its withholding of transactional documents even though those exemptions clearly do not apply. While the Board may be sincere in its belief that disclosure of the requested information would be harmful to the economy, that sincerity cannot justify its attempt to avoid its FOIA obligations without a colorable basis in the statute.

Consequently, an award of attorney's fees under 5 U.S.C. §522(a)(4)(E) should be made if Fox Business prevails on any part of the instant motion.

* * * * *

## <u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully submitted that this Court should (a) grant Fox Business summary judgment under Fed. R. Civ. P. 56; (b) issue an order requiring the Board to produce all records that it has purported to withhold under Exemptions 4 and 5 and to search for and produce all requested records of collateral in the possession of the FRBs; (c) grant Fox Business's request for attorney's fees; and (d) order a hearing to determine the amount of Fox Business's attorney's fees that must be paid.

Dated:        New York, New York
              March 27, 2009

                           **MINTZ & GOLD LLP**

                           <u>/s/ Steven G. Mintz</u>
                           Steven G. Mintz
                           470 Park Avenue South
                           10th Floor North
                           New York, New York 10016-6819
                           Tel:  (212) 696-4848
                           Fax:  (212) 696-1231
                           mintz@mintzandgold.com
                           *Attorneys for Plaintiff*
                           *Fox News Network, LLC*