UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX NEWS NETWORK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,<br><br>Defendant. | Civ. No. 09-cv-00272 (AKH) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 56.1, defendant the Board of Governors of the Federal Reserve System ("Board") submits the following statement of material facts as to which there is no genuine issue for trial.

***The First and Second FOIA Requests***

1. On or around November 10, 2008, Bruce Becker, who was affiliated with the plaintiff, Fox Business Network, sent an e-mail to the Board requesting documents under FOIA (the "First FOIA Request"). The First FOIA Request sought the names of institutions receiving Federal Reserve lending from programs including, but not limited to: Regular OMOs; Single-Tranche OMO Program; Discount Window ("DW"); Term Discount Window Program; Term Auction Facility ("TAF"); Primary Dealer Credit Facility ("PDCF"); Transitional Credit Extensions; ABCP Money Market Liquidity Facility

("AMLF"); Securities Lending ("SLP"); Term Securities Lending Facility ("TSLF"); Term Securities Lending Facility Options Program ("TOP"); and any other Federal Reserve lending facility not mentioned above, as well as an accounting of the collateral provided by these institutions in exchange for the lending. Declaration of Alison M. Thro, executed March 26, 2009 ("Thro Decl."), ¶ 4. The First FOIA Request covered the time period August 8, 2007 through November 17, 2008. Thro Decl., ¶ 5. The plaintiff did not seek expedited processing. Thro Decl., ¶ 4.

2. On or around November 18, 2008, Kevin Magee, who was affiliated with the plaintiff, sent a letter to the Board requesting documents under FOIA (the "Second FOIA Request"). The Second FOIA Request sought substantially the same information as the First FOIA Request, but for a shorter time period (the months of September and October 2008). Thro Decl., ¶ 6. In addition, the Second FOIA Request sought "[f]or each institution identified in response to number '1,' please provide, (i) records sufficient to identify all collateral pledged by each such institution; and (ii) records sufficient to show the amount borrowed or advanced to the institution." Id. The Second FOIA Request also stated: "[p]lease also provide records sufficient to identify all of the collateral held by the Fed at the close of business on November 14, 2008. This response should include information sufficient to match the institutions with the collateral that they pledged." Id. The Second FOIA Request sought expedited processing, which request was granted by the defendant. Thro Decl., ¶ 7.

3. Board staff conducted a thorough and adequate search for documents responsive to the First and Second FOIA Requests, which included reviewing documents compiled in response to approximately 19 similar FOIA requests the Board had received beginning in

or around April 2008, for the names of borrowers, loan amounts, and collateral pledged for various of the Federal Reserve Banks' extensions of credit at the DW and under special credit and liquidity facilities ("SCLFs") (collectively, the "Facilities Requests"). Thro Decl., ¶¶ 8-9. In connection with the Facilities Requests, the Board's attorney responsible for supervising the processing of FOIA requests, and Board staff acting at her direction, contacted 7 individuals in the Board's division of Monetary Affairs ("MA") and 6 individuals in the division of Reserve Bank Operations and Payment Systems ("RBOPS"), the only two divisions of the Board reasonably likely to have responsive information. Thro Decl., ¶¶ 10-12, 20. The individuals she contacted reported to staff in the Board's Legal Division whether or not they believed they had responsive information and, where appropriate, searched their files or asked members of their staff to search their files, and reported the results of these searches to the Legal Division. Thro Decl., ¶¶ 12, 20.

4. As a result of these searches, Board staff had compiled information on servers in the Legal Division, which contained information responsive to the First and Second FOIA Requests. Thro Decl., ¶¶ 12, 20. Board staff searched this information in responding to the First and Second FOIA Requests, and located approximately 6008 pages of responsive information. Thro Decl., ¶¶ 12, 15-20 and Vaughn Indices. After completing this review, Legal Division staff contacted three staff members in MA, and three staff members in RBOPS to ask whether they (or anyone else in their division or at the Board to their knowledge) had any additional responsive information, which they did not. Thro Decl., ¶¶ 12, 20. Legal Division staff searched for responsive information regarding OMOs in MA, the only division likely to have such information, and determined that

there was none. Thro Decl., ¶ 21.

5. In addition to these searches, Legal Division staff followed up on information that e-mails possibly containing responsive information had been sent by the Federal Reserve Bank of New York ("FRBNY") to a very few Board and Board staff members. Thro Decl., ¶ 26. Board staff determined that all copies of these records had been deleted or destroyed before the First and Second FOIA Requests were received, and reasonably determined that there were no agency records of these documents subject to FOIA. Id. An additional e-mail relating to the Commercial Paper Funding Facility ("CPFF"), which became operational October 27, 2008 (toward the end of the relevant time period), was reviewed and determined not to contain responsive information. Thro Decl., ¶ 27. An attachment to that e-mail, which was archived and never opened, was reasonably determined not to be an agency record subject to FOIA. Id. Legal Division staff followed up on information that one additional Board officer had received e-mails and reports from the FRBNY, determined that these documents contained an additional 178 pages of responsive information relating to borrowers and loan amounts at the PDCF, treated these documents as agency records subject to FOIA, and determined that responsive portions of these documents would be withheld in their entirety under FOIA exemptions 4 and 5. Thro Decl., ¶¶ 28–29 and Exh. I ("Supplemental Vaughn Index").

6. By letter dated January 6, 2009 to the plaintiff, the Secretary of the Board denied the Second FOIA Request. Thro Decl., ¶ 24 and Exh. G. The January 6, 2009 letter informed the plaintiff that staff had uncovered information responsive to the Second FOIA Request (described in ¶ 8 below), that there was no reasonably segregable non-exempt information, and that responsive information was being withheld in its entirety

under FOIA exemptions 4 and 5. Id.

7. By letter dated January 16, 2009 to the plaintiff, the Secretary of the Board denied the First FOIA Request. Thro Decl., ¶ 25 and Exh. H. The January 16, 2009 letter informed the plaintiff that staff had uncovered information responsive to the First FOIA Request (described in ¶ 8 below), that there was no reasonably segregable non-exempt information, and that responsive information was being withheld in its entirety under FOIA exemptions 4 and 5. Id.

8. The 6008 pages of information described in these two letters consists of "Origination Reports," "Remaining Term Reports," and "Emergency Credit Reports," prepared by staff of MA using daily data feeds from the Federal Reserve Banks, which had in turn obtained and derived the information from records of their transactions with borrowing institutions, as well as some e-mails. Thro Decl., ¶¶ 15-18 and Vaughn Indices; Declaration of Brian F. Madigan, executed March 23, 2009 ("Madigan Decl.), ¶ 18. These Reports and e-mails contained some limited information responsive to the First and Second FOIA requests including the names of borrowers at the DW and SCLFs, individual loans amounts, originating Federal Reserve Bank district, and origination and maturity dates. Id. In addition, the Board withheld approximately 1-2 pages of excerpts from a draft of collateral monitoring procedures for the DW and TAF provided by the FRBNY that contained some very limited responsive information, namely, the names of a few borrowers at the DW and TAF, the value of collateral they pledged, and additional collateral required for specific loans. Thro Decl., ¶ 19. Finally, the 178 pages of additional, withheld e-mails and reports described in ¶ 5 above contain the names of some primary dealers receiving loans at the PDCF, and some limited information on loan

amounts and dates, responsive to the First and Second FOIA Requests. Thro Decl., ¶¶ 28-29 and Supplemental Vaughn Index. The Board withheld a total of 6186 pages of responsive, exempt information from the plaintiff, which contained no reasonably segregable, non-exempt responsive information. Vaughn Indices and Supplemental Vaughn Index.

9. The 6186 pages of withheld information constitute trade secrets or commercial or financial information, obtained from a person and privileged or confidential. Thro Decl., ¶¶ 22, 28 and Exhs. G and H; Vaughn Indices and Supplemental Vaughn Index. Disclosure of this information is likely to cause substantial competitive harm to the depository institutions, primary dealers, and issuers of commercial paper whose loans are described in the withheld documents. Madigan Decl., ¶¶ 19-29; Declaration of Susan E. McLaughlin, executed March 26, 2009 ("McLaughlin Decl."), ¶¶ 21-23, 26; Declaration of Lorie K. Logan, executed March 27, 2009 ("Logan Decl."), ¶¶ 34, 37; Declaration of Anne F. Baum, executed March 27, 2009 ("Baum Decl."), ¶¶ 16-17; Declaration of Jacqueline P. Palladino, executed March 23, 2009 ("Palladino Decl."), ¶¶ 17-20. Depository institutions borrowing at the DW, TAF and AMLF face competition in the market for retail and commercial banking services from other domestic and international institutions. Madigan Decl., ¶ 22; McLaughlin Decl., ¶ 21; Palladino Decl., ¶ 17. Primary dealers eligible to borrow at the PDCF, TSLF, TOP and SLP face competition in the market for securities brokerage services from other primary dealers and domestic and international securities broker dealers. McLaughlin Decl., ¶ 26; Logan Decl., ¶ 34. Issuers of commercial paper purchased by the CPFF face competition in the market for retail goods from other U.S. and foreign issuers of commercial paper. Baum Decl., ¶ 16.

10. Disclosure of the withheld information also will impair the Board's ability to fulfill its statutory functions, including: its ability, through the Federal Reserve Banks, to provide a back-up source of liquidity to depository institutions at the DW, TAF and AMLF pursuant to section 10B and other provisions of the Federal Reserve Act ("FRA"); its ability to authorize the Federal Reserve Banks to provide funding to individuals, partnerships and corporations in unusual and exigent circumstances pursuant to section 13(3) of the FRA; and its ability to use the DW as in instrument of monetary policy "to promote effectively the goals of maximum employment, stable prices, and moderate long-term interest rates" specified in section 2A of the FRA, as amended. Madigan Decl, ¶¶ 19, 31-35; McLaughlin Decl. ¶¶ 24, 27; Logan Decl, ¶¶ 40, 42; Palladino Decl., ¶¶ 21-22; Baum Decl., ¶ 17. If financial institutions, primary dealers or issuers of commercial paper are unwilling to borrow at the DW or the SCLFs out of concern that the Board will publicly disclose the fact of their borrowings, the Board's ability to utilize these facilities as a back-up source of liquidity for depository institutions, as a source of credit for individuals, partnerships and corporations in unusual and exigent circumstances, and as a means to maximize employment, stabilize prices and moderate long-term interest rates will be impaired. Id.

11. The Origination Reports, Remaining Term Reports, and Emergency Credit Reports are distributed to high-level staff within MA and RBOPS, and select staff at the FRBNY, on a need-to-know basis for use in formulating monetary policy and for Reserve Bank oversight purposes. Thro Decl., ¶¶ 15-17 and Vaughn Indices. The remaining withheld e-mails, Draft Procedures, reports, and e-mails were transmitted among Board staff, or between FRBNY staff and Board staff. Id. and Thro Decl., ¶¶ 18-19, 28, Vaughn Indices

and Supplemental Vaughn Index. The withheld documents are inter-agency or intra-agency memoranda which contain sensitive information, not otherwise available, immediate release of which would significantly harm the Government's monetary functions or commercial interests, because release would diminish the Board's and FOMC's ability to use DW lending as an instrument of monetary policy to achieve the desired level of short term interest rates and would impair the Reserve Banks' ability, if necessary, to maximize recovery on securities pledged as collateral for loans. Madigan Decl., ¶¶ 30, 32.

12. Neither the Board, nor the FRBNY, the Federal Reserve Bank of Boston ("FRBB") or the other 10 Federal Reserve Banks, publicly disclose the names of individual institutions that borrow at the DW or SCLFs (with the exception of the names of certain specific systemically important institutions such as Bear Stearns and AIG), nor information about individual loan amounts, terms, rates for specific loans (although some general rate information is published), specific collateral pledged for specific loans, the valuation of specific loans vis-à-vis the collateral pledged (the "haircut"), collateral rejected for specific loans, individual lending or collateral documentation, or details regarding specific OMOs or SLP transactions on specific dates. Madigan Decl., ¶ 21; McLaughlin Decl., ¶¶ 17, 19; Logan Decl., ¶¶ 29, 32; Baum Decl., ¶ 15; Palladino Decl., ¶¶ 13, 15; Declaration of Christopher R. Burke, executed March 27, 2009 ("Burke Decl."), ¶ 25. Neither the Board nor the Federal Reserve Banks publicly disclose the names of institutions eligible to borrow primary or secondary credit at the DW. Madigan Decl., ¶ 28. Financial institutions borrowing at the DW, TAF or AMLF, primary dealers borrowing at the PDCF, TSLF, TOP, or SLP and issuers of securities purchased by CPFF

have an understanding that the Board and Federal Reserve Banks, and their agents, will keep confidential information regarding their borrowing. McLaughlin Decl., ¶¶ 17, 19; Logan Decl., ¶¶ 29, 32; Baum Decl., ¶ 15; Palladino Decl., ¶¶ 13, 15. This information is kept confidential because of the stigma associated with borrowing at the DW, and the likelihood of substantial competitive harm to depository institutions, should the fact of their borrowing become public. Madigan Decl., ¶¶ 22-23; McLaughlin Decl., ¶¶ 20-22; Palladino Decl., ¶¶ 16-18. The likelihood of substantial competitive harm described above also applies with regard to primary dealers and institutions that borrow at the TAF, PDCF, TSLF, TOP, AMLF and issuers of commercial paper purchased by CPFF. Madigan Decl., ¶ 26; McLaughlin Decl., ¶¶ 20, 26; Logan Decl., ¶¶ 33-37; Palladino Decl., ¶¶ 16-18; Baum Decl., ¶¶ 16-17.

13. With the exception of the withheld information, the Board has no specific, transaction-level information (such as lending and collateral documents) responsive to the First and Second FOIA Requests because the Federal Reserve Banks -- in the case of the TSLF, PDCF, TOP, SLP and CPFF, the FRBNY, and in the case of the AMLF, the FRBB -- carry out the operational side of DW and SCLF lending. Thro Decl., ¶ 14; McLaughlin Decl., ¶¶ 5, 16; Logan Decl., ¶ 27; Palladino Decl., ¶ 12; Baum Decl., ¶ 12; Madigan Decl., ¶¶ 16-17. The Board has no specific, transaction-level information about which primary dealers participate in specific OMOs on specific dates, or the SLP, because the FRBNY, as designee for the FOMC, carries out OMO and SLP operations on behalf of the Federal Reserve System. Thro Decl., ¶ 21; Madigan Decl., ¶ 16, 18; Logan Decl., ¶ 11; Burke Decl., ¶¶ 7, 18. Accordingly, as Board staff confirmed with staff of the FRBNY, some documents responsive to the First and Second FOIA Requests likely are

maintained by or on behalf of the FRBNY and FRBB. Thro Decl., ¶¶ 31-32; McLaughlin Decl., ¶ 17; Logan Decl., ¶¶ 12, 28-29; Palladino Decl., ¶ 13; Baum Decl, ¶ 13; Burke Decl., ¶ 18.

14. No Board staff member obtained, reviewed or relied upon transaction level documents responsive to the First and Second FOIA Requests at the FRBNY or FRBB in the course of performing any function for the Board. Thro Decl., ¶ 31. Staffs at the Board and at the FRBNY reasonably concluded that responsive documents at the FRBNY and FRBB are not agency records of the Board records subject to a FOIA request to the Board, and that these documents would nevertheless be exempt from disclosure under FOIA exemptions 4 and 5. Thro Decl., ¶ 32.

Dated: March 27, 2009

/s/Yvonne F. Mizusawa
Katherine H. Wheatley (007931)
Assistant General Counsel
Yvonne F. Mizusawa (YM5081)
Senior Counsel
Board of Governors of the Federal Reserve System
20th and C Streets, N.W.
Washington, D.C. 20551
Ph: (202) 452-3436
Fax: (202) 736-5615