UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FOX NEWS NETWORK, LLC.,                          :
                                                 :     No. 09-cv-00272 (AKH)
                              Plaintiff,         :
                                                 :     **COUNTER-STATEMENT OF**
                                                 :     **MATERIAL FACTS**
     -against-                                   :
                                                 :     ECF CASE
BOARD OF GOVERNORS OF THE                        :
FEDERAL RESERVE SYSTEM,                          :
                                                 :
                              Defendant.         :
---------------------------------------------------------------X

      Plaintiff Fox News Network, LLC ("Fox News"), owner of the Fox Business Network (collectively "Fox Business"), by and through its attorneys, Mintz and Gold LLP, respectfully submits this Counter-Statement of Material Facts, pursuant to Local Rule 56.1(b):

      1.     On or around November 10, 2008, Bruce Becker, who was affiliated with the plaintiff, Fox Business Network, sent an e-mail to the Board requesting documents under FOIA (the "First FOIA Request"). The First FOIA Request sought the names of institutions receiving Federal Reserve lending from programs including, but not limited to: Regular OMOs; Single-Tranche OMO Program; Discount Window ("DW"); Term Discount Window Program; Term Auction Facility ("TAF"); Primary Dealer Credit Facility ("PDCF"); Transitional Credit Extensions; ABCP Money Market Liquidity Facility ("AMLF"); Securities Lending ("SLP"); Term Securities Lending Facility ("TSLF"); Term Securities Lending Facility Options Program ("TOP"); and any other Federal Reserve lending facility not mentioned above, as well as an accounting of the collateral provided by these institutions in exchange for the lending. Declaration of Alison M. Thro, executed March 26, 2009 ("Thro Decl."), ¶4. The First FOIA request covered the time period August 8, 2007 through November 17, 2008. Thro Decl., ¶ 5.

The plaintiff did not seek expedited processing. Thro Decl., ¶ 4.

**Response**: **Fox Business agrees with the statements contained in paragraph 1.**

2.     On or around November 18, 2008, Kevin Magee, who was affiliated with the plaintiff, sent a letter to the Board requesting documents under FOIA (the "Second FOIA Request"). The Second FOIA Request sought substantially the same information as the First FOIA Request, but for a shorter time period (the months of September and October 2008). Thro Decl., ¶ 6. In addition, the Second FOIA Request sought "[f]or each institution identified in response to number "1," please provide, (i) records sufficient to identify all collateral pledged by each such institution; and (ii) records sufficient to show the amount borrowed or advanced to the institution." Id. The Second FOIA Request also stated: "[p]lease also provide records sufficient to identify all of the collateral held by the Fed at the close of business on November 14, 2008. This response should include information sufficient to match the institutions with the collateral that they pledged." Id. The Second FOIA Request sought expedited processing, which request was granted by the defendant. Thro Decl., ¶7.

**Response: Fox Business agrees with the statement in the first sentence of paragraph 2.**

- **Fox Business disputes the statement in the second sentence that the "Second FOIA Request sought substantially the same information as the First FOIA Request." This statement is belied by the balance of paragraph 2, which Fox Business agrees with. Specifically, while both FOIA requests seek information relating to the same lending facilities, they differ in at least one fundamental respect. The First FOIA request seeks an accounting of <u>the</u> collateral provided by <u>the</u> institutions in exchange for <u>the</u> lending, In contrast, the Second FOIA Request seeks "records sufficient to identify <u>all</u> collateral pledged by <u>each</u> such institution." See Declaration of Steven G. Mintz dated March 27,**

2

2009 ("<u>Mintz Decl.</u>"), Exhibits 3 and 8.

- **With respect to the last sentence of paragraph 2, Fox Business notes that defendant's decision to grant expedited processing was untimely. See Mintz Decl., Exhibits 9 at ¶ 31 and 10 at ¶¶ 3 and 31.**

3. Board staff conducted a thorough and adequate search for documents responsive to the First and Second FOIA Requests, which included reviewing documents compiled in response to approximately 19 similar FOIA requests the Board had received beginning in or around April 2008, for the names of borrowers, loan amounts, and collateral pledged for various of the Federal Reserve Banks' extensions of credit at the DW and under special credit and liquidity facilities ("SCLFs") (collectively, the "Facilities Requests"). Thro Decl., ¶¶ 8-9. In connection with the Facilities Requests, the Board's attorney responsible for supervising the processing of FOIA requests, and Board staff acting at her direction, contacted 7 individuals in the Board's division of Monetary Affairs ("MA") and 6 individuals in the division of Reserve Bank Operations and Payment Systems ("RBOPS"), the only two divisions of the Board reasonably likely to have responsive information. Thro Decl., ¶¶ 10-12, 20. The individuals she contacted reported to staff in the Board's Legal Division whether or not they believed they had responsive information and, where appropriate, searched their files or asked members of their staff to search their files, and reported the results of these searches to the Legal Division. Thro Decl., ¶¶ 12, 20.

<u>Response</u>:  **Fox Business disputes paragraph 3.**

- **The first sentence is a conclusion that Fox Business disputes. In particular, Fox Business disputes that defendant "conducted a thorough and adequate search for documents responsive to the First and Second FOIA Requests." The basis of this**

dispute is that the defendant has improperly narrowed and redefined Fox Business's Second FOIA Request so that a proper search could not have been achieved.  *Compare* Thro Decl. ¶ 13 ("I interpreted the First and Second FOIA Requests as seeking information regarding <u>specific</u> items of pledged collateral by <u>specific</u> borrowers for <u>specific</u> borrowings, rather than seeking information on the general categories or types of collateral actually pledged or available for pledge") and Thro Decl., Exhibit C, p.1 (the Second FOIA Request) ("records sufficient to identify <u>all</u> collateral pledged by <u>each</u> such institution.")  In addition, it is Fox Business's position that records held by the Reserve Banks are records of the defendant and subject to FOIA.  *See* 12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a).

- **Fox Business also disputes the statement in the first sentence that the "Facilities Requests" are "similar" to Fox Business's FOIA requests.  Ms. Thro has stated that Fox Business's requests are broader in scope.  Thro Decl. at ¶ 9.**

- **Fox Business disputes the statement in the second sentence that the Board's division of Monetary Affairs and division of Reserve Bank Operations and Payment Systems are the only two divisions of the Board reasonably likely to have responsive information.  This statement is contradicted by paragraph 5 of defendant's 56.1 statement which confirms that that the FRBNY and FRBB also have responsive records.**  *See* 12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a). *See also* Thro Decl. ¶21 (FRBNY conducts OMOs); ¶22 (the information was obtained from the Federal Reserve Banks); ¶26 (two members of the Board and one MA staff member received e-mails from the FRBNY), ¶27 (members of the Board and Board staff received weekly e-mails from the FRBNY), ¶ 28 (the Board's liaison for Chairman

**Bernanke received e-mails from the FRBNY), ¶ 31 (responsive documents were and have at all times been in the possession and control of the FRBNY and FRBB).**

- **Fox Business has no knowledge with respect to the balance of the statements in paragraph 3 because no discovery has yet taken place.**

  4.  As a result of these searches, Board staff had compiled information on servers in the Legal Division, which contained information responsive to the First and Second FOIA Requests. Thro Decl., ¶¶ 12, 20. Board staff searched this information in responding to the First and Second FOIA Requests, and located approximately 6008 pages of responsive information. Thro Decl., ¶¶ 12, 15-20 and <u>Vaughn</u> Indices. After completing this review, Legal Division staff contacted three staff members in MA, and three staff members in RBOPS to ask whether they (or anyone else in their division or at the Board to their knowledge) had any additional responsive information, which they did not. Thro Decl., ¶¶ 12, 20. Legal Division staff searched for responsive information regarding OMOs in MA, the only division likely to have such information, and determined that there was none. Thro Decl., ¶ 21.

  <u>Response</u>:  **Fox Business disputes paragraph 4.**

- **Fox Business has no knowledge with respect to the first sentence in paragraph 4 except to note that defendant improperly narrowed Fox Business's FOIA request such that the information compiled on defendant's legal division servers is likely incomplete.** *See* **Thro Decl. at ¶13.**

- **Fox Business disputes the statement in the second sentence of paragraph 4 that the defendant located "approximately 6008 pages of responsive information." Defendant's own submissions reveal that many more responsive documents exist. For example, according to the Thro Decl. ¶ 13, "an MA officer had data showing, for one**

day per month, specific collateral that depository institutions have on deposit in pledge accounts . . . ." Fox Business's position is that this information is also responsive to the FOIA Requests but is not included in 6008 pages of documents that defendant considers "responsive." In addition, according to the Thro Decl. at ¶ 15, "one MA staff member reported receiving daily data feeds (weekdays only) from each Reserve Bank on the DW and the SCLFs (but not OMOs)." Despite their responsiveness, these data feeds are not properly identified on defendant's *Vaughn* Indexes or included in the 6008 pages referenced above. *See* Mintz Decl. at Exhibits 12 and 13 and Thro Decl. Exhibit I. Next, as set forth in the Thro Decl. at ¶ 26, two Board members and one MA staff member received <u>weekly</u> (responsive) reports from FRBNY. All three persons claim that they deleted or destroyed the email transmittals and attached reports. This claim is incredible in light of the clear prohibition against such "deletions" in the Federal Records Act (44 U.S.C. §§ 2101, *et seq*., 2901, *et seq*., 3101, *et seq*., and 3301, *et seq*.), 36 C.F.R. §1234.32(d), and defendant's Records Retention Schedules. Moreover, according to defendant, the "deleted" e-mails originated at the FRBNY, where they are likely still available for production. These "deleted" emails are not included in the 6008 pages referenced above. Ms. Thro also admits in ¶ 27 of her declaration that members of the Board and their staff received <u>weekly</u> emails from the FRBNY that contained responsive information. These weekly emails are not included in the 6008 pages referenced above. Next, Ms. Thro admits in ¶28 that a Board officer received <u>daily</u> reports from FRBNY commencing March 2008, but that the Board Officer had retained only 47 of the reports of the approximately 177 daily reports that should have been generated during the relevant period. These missing reports (which were

6

**generated at the FRBNY) are not included in the 6008 pages referenced above. Finally, Fox Business disputes that the defendant located only 6008 pages of responsive information. As set forth in Fox Business's response to ¶ 3 above, the defendant has improperly narrowed and redefined Fox Business's Second FOIA Request so that a proper search could not have been achieved.**

- **Fox Business has no knowledge with respect to the third sentence in paragraph 4, since there has been no discovery in this action.**

- **With respect to the fourth sentence of paragraph 4, Fox Business disputes that MA is the only division likely to have information regarding OMOs. According to ¶ 21 of the Thro Decl. "the FRBNY conducts OMOs." Accordingly, the FRBNY is likely to have information regarding OMOs. Also, because defendant improperly narrowed Fox Business's FOIA requests (*See* response to ¶ 3 above) it is likely that additional divisions of the defendant have responsive records.**

5.    In addition to these searches, Legal Division staff followed up on information that e-mails possibly containing responsive information had been sent by the Federal Reserve Bank of New York ("FRBNY") to a very few Board and Board staff members. Thro Decl., ¶ 26. Board staff determined that all copies of these records had been deleted or destroyed before the First and Second FOIA Requests were received, and reasonably determined that there were no agency records of these documents subject to FOIA. Id. An additional e-mail relating to the Commercial Paper Funding Facility ("CPFF"), which became operational October 27, 2008 (toward the end of the relevant time period), was reviewed and determined not to contain responsive information. Thro Decl., ¶ 27. An attachment to that e-mail, which was archived and never opened, was reasonably determined not to be an agency record subject to FOIA. Id. Legal

7

Division staff followed up on information that one additional Board officer had received e-mails and reports from the FRBNY, determined that these documents contained an additional 178 pages of responsive information relating to borrowers and loan amounts at the PDCF, treated these documents as agency records subject to FOIA, and determined that responsive portions of these documents would be withheld in their entirety under FOIA exemptions 4 and 5. Thro Decl., ¶¶ 28-29 and Exh. I ("Supplemental <u>Vaughn</u> Index").

    **<u>Response</u>:  Fox Business disputes paragraph 5.**

- **Fox Business has no information with respect to the first sentence of paragraph 5, since there has been no discovery in this action.**

- **Fox Business disputes the second sentence in paragraph 5 that "all copies of these records had been deleted or destroyed," in light of the clear prohibition against such "deletions" in the Federal Records Act (44 U.S.C. §§ 2101,** *et seq.***, 2901,** *et seq.***, 3101,** *et seq.***, and 3301,** *et seq.***), 36 C.F.R. §1234.32(d), and defendant's Records Retention Schedules.  Further, it is simply not believable in this day and age that because an end-user deletes an electronic record that the record is literally gone. Instead, the likely scenario is that the "deleted" information is still available from back-up contingencies or in the end-users "deleted" folder.  Moreover, according to defendant, the "deleted" e-mails originated at the FRBNY, where they are likely still available and subject to FOIA.  Thro Decl. ¶26.  *See* 12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a).**

- **With respect to the third sentence of paragraph 5, Fox Business disputes that the e-mail relating to the CPFF did not contain responsive information.  As set forth in Fox Business's response to ¶ 3 above, the defendant has improperly narrowed and**

**redefined Fox Business's Second FOIA Request so that a proper search could not have been achieved.**

- **Fox Business disputes the statement in the fourth sentence of paragraph 5 because the "attachment" is a record of the defendant pursuant to 12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a). Further, the "attachment" originated at the FRBNY, where it is likely still available and subject to FOIA.**

- **With respect to the last sentence of paragraph 5, Fox Business disputes defendant's conclusion that the e-mails and reports from the FRBNY only contained an additional 178 pages of responsive information. As set forth in Fox Business's response to ¶ 3 above, the defendant has improperly narrowed and redefined Fox Business's Second FOIA Request so that a proper search could not have been achieved.**

6. By letter dated January 6, 2009 to the plaintiff, the Secretary of the Board denied the Second FOIA Request. Thro Decl., ¶ 24 and Exh. G. The January 6, 2009 letter informed the plaintiff that staff had uncovered information responsive to the Second FOIA Request (described in ¶ 8 below), that there was no reasonably segregable nonexempt information, and that responsive information was being withheld in its entirety under FOIA exemptions 4 and 5. Id.

**Response: Fox Business agrees with the statements contained in paragraph 6.**

7. By letter dated January 16, 2009 to the plaintiff, the Secretary of the Board denied the First FOIA Request. Thro Decl., ¶ 25 and Exh. H. The January 16, 2009 letter informed the plaintiff that staff had uncovered information responsive to the First FOIA Request (described in ¶ 8 below), that there was no reasonably segregable non-exempt information, and that responsive information was being withheld in its entirety under FOIA exemptions 4 and 5. Id.

**Response: Fox Business agrees with the statements contained in paragraph 7.**

8.      The 6008 pages of information described in these two letters consists of "Origination Reports," "Remaining Term Reports," and "Emergency Credit Reports," prepared by staff of MA using daily data feeds from the Federal Reserve Banks, which had in turn obtained and derived the information from records of their transactions with borrowing institutions, as well as some e-mails. Thro Decl., ¶¶ 15-18 and Vaughn Indices; Declaration of Brian F. Madigan, executed March 23, 2009 ("Madigan Decl."), ¶ 18. These Reports and e-mails contained some limited information responsive to the First and Second FOIA requests including the names of borrowers at the DW and SCLFs, individual loans amounts, originating Federal Reserve Bank district, and origination and maturity dates. Id. In addition, the Board withheld approximately 1-2 pages of excerpts from a draft of collateral monitoring procedures for the DW and TAF provided by the FRBNY that contained some very limited responsive information, namely, the names of a few borrowers at the DW and TAF, the value of collateral they pledged, and additional collateral required for specific loans. Thro Decl., ¶19. Finally, the 178 pages of additional, withheld e-mails and reports described in ¶15 above contain the names of some primary dealers receiving loans at the PDCF, and some limited information on loan amounts and dates, responsive to the First and Second FOIA Requests. Thro Decl., ¶¶28-29 and Supplemental Vaughn Index. The Board withheld a total of 6186 pages of responsive, exempt information from the plaintiff, which contained no reasonably segregable, non-exempt responsive information. Vaughn Indices and Supplemental Vaughn Index.

**Response: Fox Business disputes the statement in paragraph 8. Ms. Thro's declaration reveals, on its face, that the Board received a "daily data feed" from each FRB. Thro Decl. ¶15. Furthermore, Ms. Thro unilaterally restricted the scope of Fox Business's Requests "as seeking information regarding specific items pledged as collateral by specific**

borrowers for specific borrowings. . . ." *See Id. at ¶ 13.* Therefore, based upon the evidence of this motion, there is a question of material fact regarding the number of responsive records collected by the Board.

9.  The 6186 pages of withheld information constitute trade secrets or commercial or financial information, obtained from a person and privileged or confidential. Thro Decl., ¶¶22, 28 and Exhs. G and H; <u>Vaughn</u> Indices and Supplemental <u>Vaughn</u> Index. Disclosure of this information is likely to cause substantial competitive harm to the depository institutions, primary dealers, and issuers of commercial paper whose loans are described in the withheld documents. Madigan Decl., ¶¶ 19-29; Declaration of Susan E. McLaughlin, executed March 26, 2009 ("McLaughlin Decl."), ¶¶ 21-23, 26; Declaration of Lorie K. Logan, executed March 27, 2009 ("Logan Decl."), ¶¶ 34, 37; Declaration of Anne F. Baum, executed March 27, 2009 ("Baum Decl."), ¶¶ 16-17; Declaration of Jacqueline P. Palladino, executed March 23, 2009 ("Palladino Decl."), ¶¶ 17-20. Depository institutions borrowing at the DW, TAF and AMLF face competition in the market for retail and commercial banking services from other domestic and international institutions. Madigan Decl., ¶22; McLaughlin Decl., ¶ 21; Palladino Decl., ¶17. Primary dealers eligible to borrow at the PDCF, TSLF, TOP and SLP face competition in the market for securities brokerage services from other primary dealers and domestic and international securities broker dealers. McLaughlin Decl., ¶ 26; Logan Decl., ¶ 34. Issuers of commercial paper purchased by the CPFF face competition in the market for retail goods from other U.S. and foreign issuers of commercial paper. Baum Decl., ¶16.

**Response: Fox Business disputes paragraph 9.**

- **The first sentence of paragraph 9 is a legal conclusion that Fox Business disputes.**

- **Fox Business disagrees with the second sentence of paragraph 9 which is conclusory and based entirely on unsupported speculation and conjecture that is not evidentiary in nature.**

- **Fox Business has no knowledge with respect to the balance of the statements in paragraph 9.**

10.     Disclosure of the withheld information also will impair the Board's ability to fulfill its statutory functions, including: its ability, through the Federal Reserve Banks, to provide a back-up source of liquidity to depository institutions at the DW, TAF and AMLF pursuant to section 10B and other provisions of the Federal Reserve Act ("FRA"); its ability to authorize the Federal Reserve Banks to provide funding to individuals, partnerships and corporations in unusual and exigent circumstances pursuant to section 13(3) of the FRA; and its ability to use the DW as in instrument of monetary policy "to promote effectively the goals of maximum employment, stable prices, and moderate long-term interest rates" specified in section 2A of the FRA, as amended.  Madigan Decl, ¶¶19, 31-35; McLaughlin Decl. ¶¶24, 27; Logan Decl, ¶¶ 40, 42; Palladino Decl., ¶¶2122; Baum Decl., ¶17.  If financial institutions, primary dealers or issuers of commercial paper are unwilling to borrow at the DW or the SCLFs out of concern that the Board will publicly disclose the fact of their borrowings, the Board's ability to utilize these facilities as a back-up source of liquidity for depository institutions, as a source of credit for individuals, partnerships and corporations in unusual and exigent circumstances, and as a means to maximize employment, stabilize prices and moderate long-term interest rates will be impaired. Id.

**Response**:  **Fox Business disputes paragraph 10, which consists entirely of non-evidentiary speculative conclusions.  Fox Business further submits that paragraph 10 does**

**not contain a statement of material fact because the impact upon an agency's "ability to fulfill its statutory functions" is not a relevant consideration under Exemption 4 of FOIA.**

11.  The Origination Reports, Remaining Term Reports, and Emergency Credit Reports are distributed to high-level staff within MA and RBOPS, and select staff at the FRBNY, on a need-to-know basis for use in formulating monetary policy and for Reserve Bank oversight purposes. Thro Decl., ¶¶15-17 and <u>Vaughn</u> Indices.  The remaining withheld e-mails, Draft Procedures, reports, and e-mails were transmitted among Board staff, or between FRBNY staff and Board staff.  <u>Id</u>.  and Thro Decl., ¶¶ 18-19, 28, <u>Vaughn</u> Indices and Supplemental <u>Vaughn</u> Index.  The withheld documents are inter-agency or intra-agency memoranda which contain sensitive information, not otherwise available, immediate release of which would significantly harm the Government's monetary functions or commercial interests, because release would diminish the Board's and FOMC's ability to use DW lending as an instrument of monetary policy to achieve the desired level of short term interest rates and would impair the Reserve Banks' ability, if necessary, to maximize recovery on securities pledged as collateral for loans.  Madigan Decl., ¶¶30, 32.

   **<u>Response</u>:  Fox Business disputes paragraph 11.**

   - **Fox Business has no knowledge with respect to the first sentence of paragraph 11.**

   - **Fox Business has no knowledge with respect to the second sentence of paragraph 11.**

   - **Fox Business disagrees with the last sentence of paragraph 11 which is conclusory and based entirely on unsupported speculation and conjecture that is not evidentiary in nature.  Fox Business further disputes the last sentence because the**

**record reveals, on its face, that the documents referred to relate to lending that took place long ago, and cannot be the proper subject of Exemption 5 under *Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979).**

12.    Neither the Board, nor the FRBNY, the Federal Reserve Bank of Boston ("FRBB") or the other 10 Federal Reserve Banks, publicly disclose the names of individual institutions that borrow at the DW or SCLFs (with the exception of the names of certain specific systemically important institutions such as Bear Stearns and AIG), nor information about individual loan amounts, terms, rates for specific loans (although some general rate information is published), specific collateral pledged for specific loans, the valuation of specific loans vis-a-vis the collateral pledged (the "haircut"), collateral rejected for specific loans, individual lending or collateral documentation, or details regarding specific OMOs or SLP transactions on specific dates. Madigan Decl., ¶ 21; McLaughlin Decl., ¶¶17, 19; Logan Decl., ¶¶ 29, 32; Baum Decl., ¶ 15; Palladino Decl., ¶¶13, 15; Declaration of Christopher R. Burke, executed March 27, 2009 ("Burke Decl."), ¶ 25. Neither the Board nor the Federal Reserve Banks publicly disclose the names of institutions eligible to borrow primary or secondary credit at the DW. Madigan Decl., ¶28. Financial institutions borrowing at the DW, TAF or AMLF, primary dealers borrowing at the PDCF, TSLF, TOP, or SLP and issuers of securities purchased by CPFF have an understanding that the Board and Federal Reserve Banks, and their agents, will keep confidential information regarding their borrowing. McLaughlin Decl., ¶¶ 17, 19; Logan Decl., ¶¶29, 32; Baum Decl., ¶ 15; Palladino Decl.,¶¶13, 15. This information is kept confidential because of the stigma associated with borrowing at the DW, and the likelihood of substantial competitive harm to depository institutions, should the fact of their borrowing become public. Madigan Decl., ¶¶22-23; McLaughlin Decl., ¶¶20-22; Palladino Decl., ¶¶16-18. The likelihood of substantial

competitive harm described above also applies with regard to primary dealers and institutions that borrow at the TAF, PDCF, TSLF, TOP, AMLF and issuers of commercial paper purchased by CPFF.  Madigan Decl., ¶ 26; McLaughlin Decl., ¶¶ 20, 26; Logan Decl., ¶¶33-37; Palladino Decl., ¶¶ 16-18; Baum Decl., ¶¶16-17.

**Response:  Fox Business disputes paragraph 12.**

- **Fox Business agrees with the first and second sentences in paragraph 12.**

- **Fox Business has no knowledge with respect to the third sentence of paragraph 12.**

- **Fox Business disputes the fourth and fifth sentences of paragraph 12 which are conclusory and based entirely on unsupported speculation and conjecture. The Court can take judicial notice of the reporting by certain institutions under the Discount Window and other facilities, which intuitions were not the victim of a "stigma" by reason of such borrowing.  *See* Accompanying Memorandum of Law, pp. 23-30  and various Annual Reports on S.E.C. Form 10-K cited therein.**

13.     With the exception of the withheld information, the Board has no specific, transaction-level information (such as lending and collateral documents) responsive to the First and Second FOIA Requests because the Federal Reserve Banks -- in the case of the TSLF, PDCF, TOP, SLP and CPFF, the FRBNY, and in the case of the AMLF, the FRBB -- carry out the operational side of DW and SCLF lending.  Thro Decl., ¶ 14; McLaughlin Decl., ¶¶5, 16; Logan Decl., ¶ 27; Palladino Decl., ¶ 12; Baum Decl., ¶ 12; Madigan Decl., ¶16-17.  The Board has no specific, transaction-level information about which primary dealers participate in specific OMOs on specific dates, or the SLP, because the FRBNY, as designee for the FOMC, carries out OMO and SLP operations on behalf of the Federal Reserve System. Thro Decl., ¶21; Madigan

Decl., ¶ 16, 18; Logan Decl., ¶11; Burke Decl., ¶¶7, 18. Accordingly, as Board staff confirmed with staff of the FRBNY, some documents responsive to the First and Second FOIA Requests likely are maintained by or on behalf of the FRBNY and FRBB. Thro Decl., ¶¶31-32; McLaughlin Decl., ¶ 17; Logan Decl., ¶¶12, 28-29; Palladino Decl., ¶13; Baum Decl, ¶13; Burke Decl., ¶18.

**Response: Fox Business disputes paragraph 13.**

- **Fox Business disputes the first sentence of paragraph 13 that defendant "has no specific, transaction-level information (such as lending and collateral documents) responsive to the First and Second FOIA Requests." First, records in the possession of the Federal Reserve Banks are records of the defendant that are subject to FOIA.** *See* **12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a).** *See also* **Thro Decl. ¶19 (Board approved guidelines for collateral requirements), ¶26 (two members of the Board and one MA staff member received weekly reports that included collateral information), ¶27 (members of the Board and Board staff received weekly e-mails from the FRBNY), ¶ 28 (the Board's liaison officer for Chairman Bernanke received e-mails from the FRBNY containing collateral reports).**

- **Fox Business disputes the second sentence of paragraph 13. Records in the possession of the FRBNY are records of the defendant that are subject to FOIA.** *See* **12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a).**

- **Fox Business agrees with the third sentences in paragraph 13.**

14. No Board staff member obtained, reviewed or relied upon transaction level documents responsive to the First and Second FOIA Requests at the FRBNY or FRBB in the course of performing any function for the Board. Thro Decl., ¶31. Staffs at the Board and at the

FRBNY reasonably concluded that responsive documents at the FRBNY and FRBB are not agency records of the Board records subject to a FOIA request to the Board, and that these documents would nevertheless be exempt from disclosure under FOIA exemptions 4 and 5. Thro Decl., ¶32.

**Response**:  Fox Business disputes paragraph 14.

- **Fox Business disputes the first sentence of paragraph 14.  First, paragraph 5 (above) belies this statement because staff of the defendant "obtained" responsive documents.**  *See also* **Thro Decl. ¶19 (Board approved guidelines for collateral requirements), ¶22 (the information was obtained from the Federal Reserve Banks), ¶26 (two members of the Board and one MA staff member received e-mails from the FRBNY), ¶27 (members of the Board and Board staff received weekly e-mails from the FRBNY), ¶ 28 (the Board's liaison for Chairman Bernanke received e-mails from the FRBNY), ¶ 31 (responsive documents were and have at all times been in the possession and control for the FRBNY and FRBB).  Board Records in the possession of the Federal Reserve Banks are records of the defendant that are subject to FOIA.**  *See* **12 C.F.R. § 261.2(i)(1)(i); 12 C.F.R. § 261.2(i)(1)(ii); 12 C.F.R. § 261.3(a).**

- **Fox Business also disputes the legal conclusion set forth in the second sentence of paragraph 14.**

Dated:  New York, New York
        April 17, 2009

**MINTZ & GOLD LLP**

/s/ Steven G. Mintz
Steven G. Mintz
Terence W. McCormick
Paul Ostensen
470 Park Avenue South
10th Floor North
New York, N.Y. 10016-6819
Tel:  (212) 696-4848
Fax:  (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
ostensen@mintzandgold.com
*Attorneys for Plaintiff*
*Fox News Network, LLC*