UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FOX NEWS NETWORK, LLC,                         :
                                                :
                    Plaintiff,                  :    **09 Civ. 00272 (AKH)**
    -against-                                   :
                                                :    ECF Case
BOARD OF GOVERNORS OF THE                       :
FEDERAL RESERVE SYSTEM,                         :
                                                :
                    Defendant.                  :
-------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

 

**MINTZ & GOLD LLP**
470 Park Avenue South
10th Floor North
New York, N.Y. 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
*Attorneys for Plaintiff*
*Fox News Network, LLC*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

    I.    THE BOARD CANNOT RELY UPON FOIA EXEMPTION 4 BECAUSE THE FOIA REQUESTS BY FOX BUSINESS DO NOT REQUIRE DISCLOSURE OF CONFIDENTIAL INFORMATION FROM "PERSONS" OUTSIDE THE FEDERAL RESERVE SYSTEM .......... 4

        A.    The Records Sought by Fox Business Were Generated by the Federal Reserve System, Not by Borrowers ............................................... 4

        B.    Subjective Expectations of Confidentiality Cannot Trump the Board's Disclosure Obligations Under FOIA ........................................... 6

    II.    THE BOARD'S SPECULATION ABOUT THE PROSPECT OF COMPETITIVE HARM TO THE BORROWERS IS OF NO EVIDENTIARY VALUE AND IS UNDERMINED BY THE STALENESS OF THE INFORMATION ............................................................ 8

        A.    The Board, Not Fox Business, Relies Upon Speculation ......................... 9

        B.    Competitive Harm is Impossible Because the Information Is Stale .......... 9

    III.    DOCUMENTS HELD BY THE FEDERAL RESERVE BANKS IDENTIFYING BORROWERS, LOAN AMOUNTS AND COLLATERAL ARE RECORDS OF THE BOARD ..........................................11

    IV.    THE NARROW EXEMPTION FOR GOVERNMENT COMMERCIAL INFORMATION IN FOMC v. MERRILL IS IRRELEVANT TO FOX BUSINESS'S FOIA REQUESTS ..................................................................... 14

CONCLUSION ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Bruh v. Bessemer Venture Partners III L.P.*,
    464 F.3d 202 (2d Cir. 2006),
    *cert. denied*, 549 U.S. 1209 (2007) ................................................................... 13

*Buffalo Evening News, Inc. v. Small Business Admin.*,
    666 F. Supp. 467 (W.D.N.Y. 1987) ..................................................... 2, 5, 7, 8

*Christensen v. Harris County*,
    529 U.S. 576 (2000) ............................................................................................ 13

*Clarke v. United States Dep't of the Treasury*,
    No. 84-1873, 1986 WL 1234 (E.D. Pa. Jan. 28, 1986) ....................................... 6

*Department of Air Force v. Rose*,
    425 U.S. 352 (1976) .............................................................................................. 1

*Federal Open Market Committee v. Merrill*,
    443 U.S. 340 (1979) ........................................................................... 4, 12, 14, 15

*Inner City Press/Community on the Move v. Board of Governors of the Federal Reserve*,
    463 F.3d 239 (2d Cir. 2006) ................................................................................. 4

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) .............................................................................................. 8

*Judicial Watch, Inc. v. Food & Drug Admin.*,
    449 F.3d 141 (D.C. Cir. 2006) ............................................................................. 4

*Kissinger v. Reporters Committee for Freedom of the Press*,
    445 U.S. 136 (1980) .............................................................................................. 2

*Lin v. United States Dep't of Justice*,
    459 F.3d 255 (2d Cir. 2006) ............................................................................... 13

*Nadler v. Federal Deposit Insurance Corp.*,
    92 F.3d 93 (2d Cir. 1996) ..................................................................................... 4

*New York Public Interest Research Group v. United States
    Environmental Protection Agency*,
    249 F. Supp. 2d 327 (S.D.N.Y. 2003) .............................................................. 5, 7

*Soucie v. David*,
    448 F.2d 1067 (D.C. Cir. 1971) ........................................................................... 5

*United States Dep't of Justice v. Reporters Committee For Freedom of Press*,
    489 U.S. 749 (1989) ............................................................................................... 13

**Statutes and Rules**

5 U.S.C. § 552(1)(4)(B) ................................................................................................. 8

5 U.S.C. § 552(b)(3) ...................................................................................................... 6

5 U.S.C. § 552(b)(4) ...................................................................................................... 2

5 U.S.C. § 552(b)(5) ...................................................................................................... 2

12 U.S.C. § 248(k) ...................................................................................................... 11

12 C.F.R. § 261.2(i)(1)(i) ............................................................................. 3, 11, 12, 13

12 C.F.R. § 261.2(i)(1)(ii) ........................................................................................... 12

12 C.F.R. § 261.3(a) .................................................................................................... 12

12 C.F.R. § 265.11 ...................................................................................................... 12

Fed. R. Civ. P. 56 .......................................................................................................... 1

Local Rule 56.1(a) ........................................................................................................ 3

Local Rule 56.1(b) ........................................................................................................ 3

Plaintiff, Fox News Network, LLC ("Fox News"), owner of the Fox Business Network (collectively "Fox Business"), respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 and the Freedom of Information Act ("FOIA"), and in response to the submissions of the defendant, the Board of Governors of the Federal Reserve System (the "Board").

## PRELIMINARY STATEMENT

This action is among the most critical FOIA cases ever to be heard in a federal court. What is at stake in this action is the media's ability to investigate and report on the government's response to the greatest threat to the banking system since 1929. Disclosure of the information requested by Fox Business would cast a floodlight on several persistent questions that the Federal Reserve System has steadfastly refused to answer. Are the banks that use the Discount Window and certain Special Credit and Liquidity Facilities ("SCLFs") posting as security the very same toxic, sub-prime, mortgage-based securities that gave rise to the liquidity crisis in the first place? How is the collateral priced? Is the Federal Reserve System's network of emergency liquidity facilities a successful approach to the global economic crisis, by which the banking system has truly been rescued, or is it a delaying of the inevitable? Those questions cannot be answered if the Court allows the Board to cloak these records in secrecy. "[T]he basic policy [of FOIA is] that disclosure, not secrecy, is the dominant objective of the Act." *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

Fox Business has established a *prima facie* entitlement to summary judgment by demonstrating, through uncontroverted evidence, that (a) agency records (b) have been improperly (c) withheld in response to two requests for information that Fox Business submitted to the Board (the "FOIA Requests"). *Kissinger v. Reporters Committee for Freedom of the*

1

*Press*, 445 U.S. 136, 150 (1980).  The undisputed record shows that the Board and one or more Federal Reserve Banks ("FRBs") possess records sufficient to identify member banks that have borrowed money from the Federal Reserve System's liquidity facilities, the amounts those banks borrowed and the collateral they pledged to secure the loans.  It is also undisputed that the Board is withholding every item of information in its possession that is responsive to the FOIA Requests.

Resolution of Fox Business's motion for summary judgment therefore turns on two issues: (i) whether the records held by the Board and the FRBs are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4) ("Exemption 4") or 5 U.S.C. § 552(b)(5) ("Exemption 5") and (ii) whether the documents held by the FRBs constitute agency records subject to disclosure under FOIA.  But the Board has not adduced evidentiary facts sufficient to sustain a statutory FOIA exemption.  On the face of the record, the documents requested by Fox Business are not of the sort that could be withheld under either Exemption 4 or 5, and the records held by the FRBs are agency records as a matter of law.

Concerning Exemption 4, the Board has failed to overcome the persuasive authority of the holding in *Buffalo Evening News v. Small Bus. Admin.*, 666 F. Supp. 467 (W.D.N.Y. 1987).  Just as the district court in *Buffalo Evening News* found that data regarding SBA lending generated by the government was to be distinguished from the underlying loan applications, the data sought by the FOIA Requests are agency records, not documents submitted by borrowers – a fact made plain by the very descriptions of those records in the *Vaughn* indexes and the Declarations of Alison M. Thro.  The Board otherwise protests that it cannot surrender the data because there is an "understanding" of some sort that it will not do so.  But a federal agency may not unilaterally commit to violate FOIA in advance.

2

The Board continues to defend its withholding of responsive information by predicting financial apocalypse. But speculation is not evidence. Nor is it law: there is no exemption in FOIA based upon an agency's fear of tremors in the market. In any case, the well established record of banks that have already publicly disclosed their use of the Board's emergency liquidity facilities (which is evidence) defeats that claim under Exemption 4.[1]

With regard to its argument under Exemption 5, the Board stretches the narrowly circumscribed holding in *Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979) ("FOMC"), well beyond the boundaries established by the Supreme Court, in a subtle effort to write FOIA out of the statute books. *FOMC* found within Exemption 5 a *temporary* exemption from disclosure under FOIA of the government's confidential commercial information in pending transactions. *FOMC* was not a blanket grant of authority to the Federal Reserve System to withhold records based upon the Board's desire to conduct monetary policy in secret.

Finally, the Board attempts to explain away the meaning of regulations that make documents at the FRBs records of the Board subject to FOIA. Although those records unmistakably relate to the "performance of functions for or *on behalf of the Board*," 12 C.F.R. § 261.2(i)(1)(i), the Board would have this Court believe, in effect, that the FRBs are acting on their own. The Board's reading flouts FOIA, the plain language of its own regulations, and common sense. For the foregoing reasons, the Court should grant Fox Business summary judgment, direct the Board to disclose the records it has withheld, and hold a hearing on Fox Business's application for attorney's fees.

---

[1] When the Board filed its memorandum of law and the Supplemental Declaration of Alison M. Thro in opposition to Fox Business's motion for summary judgment, the Board neglected to include a counter-statement of material facts, as required by Local Rule 56.1(b), in response to the Statement of Material Facts Not in Dispute that Fox Business had filed under Local Rule 56.1(a). Fox Business consented to the Board's filing its counter-statement out of time. However, Fox Business reserves the right to correct the record or avoid unfair surprise. Furthermore, to the extent that the Board makes averments in response to Fox Business's Rule 56.1 statement without citation to admissible evidence, the Board's counter-statement fails to create a material issue of fact. *See* Local Rule 56.1(d).

# ARGUMENT

## I

### THE BOARD CANNOT RELY UPON FOIA EXEMPTION 4 BECAUSE THE FOIA REQUESTS BY FOX BUSINESS DO NOT REQUIRE DISCLOSURE OF CONFIDENTIAL INFORMATION FROM "PERSONS" OUTSIDE THE FEDERAL RESERVE SYSTEM

Exemption 4 applies only if <u>all three</u> elements of a tri-partite test are satisfied: (1) the information sought must be a trade secret or "commercial or financial" in character; (2) it must have been "obtained from a person;" and (3) it must be "privileged or confidential."  *E.g.*, *Inner City Press/Community on the Move v. Board of Governors of the Federal Reserve*, 463 F.3d 239, 244 (2d Cir. 2006); *Nadler v. Federal Deposit Insurance Corp.*, 92 F.3d 93, 95 (2d Cir. 1996). The Board has failed to satisfy both the second and the third prongs of the test because the Board did not obtain the requested records "*from a person*," but generated those records itself in the administration of the Discount Window and the other liquidity facilities.  Nor has the Board met its burden of demonstrating a likelihood of competitive harm to the borrowers.

    A.    The Records Sought by Fox Business Were Generated by the <u>Federal Reserve System, Not by Borrowers</u>.

While the Board originally implied in its own motion for summary judgment that both the FRBs and the borrowers are "persons" from whom responsive information was obtained for purposes of Exemption 4 (*see* Fed. Res. SJ Mem., dated March 27, 2009, at 18), the Board now apparently retreats from that position and makes clear that it is the "borrowers at the [Discount Window] and SCLF" who are the relevant "persons."  (*See* Fed. Res. Opp. Mem., dated April 17, 2009, at 4).

However, as the Supreme Court stated in *Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979) ("<u>FOMC</u>"), records generated *by the government* cannot be withheld under Exemption 4.  *Id.* at 360.  *See also Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141,

4

148 (D.C. Cir. 2006) ("[u]nlike many other types of information subject to an agency's control, materials implicating Exemption 4 are generally not developed within the agency"; "[i]nstead, [the agency] must procure commercial information from third parties either by requirement or request*"*); *Soucie v. David*, 448 F.2d 1067, 1079 & n. 47 (D.C. Cir. 1971) (exemption for confidential information is available only with respect to information received from sources outside the Government).

Not surprisingly, the Board seeks to deflect the Court's attention from *Buffalo Evening News v. Small Bus. Admin.*, 666 F. Supp. 467 (W.D.N.Y. 1987), describing it as "noticeably devoid of analysis, and perhaps for that reason has not been followed by any other court." (Fed. Res. Opp. Mem. at 3, n. 3). Unfortunately for the Board, the decision in *Buffalo Evening News* was extensively and impeccably analyzed. *Buffalo Evening News* was also cited approvingly by this very Court in *New York Public Interest Research Group ("NYPIRG") v. United States Environmental Protection Agency*, 249 F. Supp. 2d 327, 336 (S.D.N.Y. 2003) (Hellerstein, J.).

*In Buffalo Evening News*, a newspaper had requested information from the Small Business Administration ("SBA") regarding loan amounts, amounts repaid and the status of loans from certain businesses that had borrowed on an emergency basis following the "Ash Wednesday ice storm of 1976 and the Blizzard of 1977." 666 F. Supp. at 467-68. The newspaper sought information that had been generated within the SBA regarding the individual loan amounts, and argued that the records did not "implicate any financial information provided to the government by the borrower." *Id*. at 468-69. The newspaper argued that "the only connection between the information sought here and the information obtained from the borrower is that 'a loan was granted by the SBA presumably on the basis of financial records submitted by the borrower.'" *Id*. at 469. The SBA responded that it "obtains information concerning the

5

status of a disaster loan from the small business itself, *i.e.*, the action or inaction of the business in paying its SBA loan obligation determines the loan's status. SBA merely [compiles] and records the data supplied by the business through its loan activity." *Id*.

The district court found that the fact of whether and to what degree a loan had been paid off was a record made by the government, generated in the course of its involvement with the borrower, and "in no way implicates any of the financial information provided by the borrowers to the government." *Id*. Put another way, as the originator and servicer of the loan, the SBA knew from its own loan origination records and its ongoing administration of the loans whether borrowers had repaid the loans, without the necessity of any information being provided by the borrowers. The same reasoning applies here. Simply put, once the borrower *borrows*, and the money changes hands, knowledge of the loan is no longer the borrower's exclusive property; the record of the lending belongs to the government and can be obtained through FOIA.[2]

  B.  Subjective Expectations of Confidentiality Cannot Trump the
     Board's Disclosure Obligations Under FOIA.

Since the records sought by the FOIA Requests are generated by the Federal Reserve System, and are not submitted to the Board by the borrowers themselves, the Board simply tries to change the subject. Specifically, the Board asserts that even if "the identity of the borrowing institutions, the amounts they have borrowed, and the collateral they pledged 'are all facts generated in the lending process itself and maintained by the FRB,' [citing Fox Business's brief], it is apparent from the evidence submitted by the Board that borrowers at the [Discount Window]

---

[2] The Board's reliance on the unpublished decision in *Clarke v. United States Dep't of the Treasury*, No. 84-1873, 1986 WL 1234 (E.D. Pa. Jan. 28, 1986) is misplaced. *Clarke* rested on a specific regulation (as well as a legend on the bonds) making the bond information confidential. *See id.* at *2. No such regulation or bilateral contractual undertaking exists here; the Board speaks only of an "understanding" or "expectation" of confidentiality. Moreover, *Clarke* does not provide authority for the proposition that a federal agency may, whether by regulation, "industry practice" or by agreement, unilaterally override FOIA in advance. Only Congress may create a FOIA exemption, whether within FOIA itself or through the operation of another statute. 5 U.S.C. § 552(b)(3).

6

and SCLFs have an expectation of confidentiality in that very information." (Fed. Res. Opp. Mem. at 5). While no borrowers have submitted affidavits substantiating such an "expectation," (or otherwise intervened or filed a "reverse-FOIA" action), the Board relies upon assertions by several staff members of two FRBs that there is an "understanding" of some sort between the FRBs and the member banks that the identity of borrowers, the amounts borrowed and the collateral pledged as security for such loans will be kept confidential.[3]

To begin with, the Board's statement is a non-sequitur. Borrowing institutions may very well "expect" or "understand" that the Federal Reserve System will oblige them by concealing the fact of their borrowing from the Discount Window or the SCLFs. But that does not detract in any way from the fact that documents summarizing borrowing from the Discount Window and SCLFs are records <u>of the Board</u>, not documents received from an external source.

More to the point, the so-called "understanding" – be it implicit or explicit – is of no help whatever to the Board because, once one accepts that the FOIA Requests seek <u>agency</u> records, the borrowers' subjective expectation of confidentiality provides no justification for withholding those records from the public in violation of FOIA. As this Court observed in *NYPIRG*:

> "[D]isclosure policy cannot be contingent on the subjective intent of those who submit information. For example, it clearly would be inappropriate to withhold all information, no matter how innocuous, submitted by a corporation with a blanket policy of refusing all public requests for information."

*Id.* at 336 (quoting H.R. Rep. No. 95-1382, at 18 (1978)).

---

[3] The Board also attempts to distinguish *Buffalo Evening News* on the ground that there was a statutory requirement at the time of the *Buffalo Evening News* decision to submit "comprehensive annual reports to the President and Congress" regarding the identity of SBA loan recipients. (Fed. Res. Opp. Mem. at 3, n.2). However, the district court in *Buffalo Evening News* did not ground its denial of Exemption 4 on the fact that the borrowers' identities were public, but upon the sole relevant criterion, *i.e.*, whether the information requested by the newspaper's FOIA request was originated *by the government* as opposed to a third party. That the Small Business Act was subsequently amended to terminate the reporting requirement does not change the result; in either case a federal agency may not withhold agency records, including the names of companies with which it does business, unless Congress creates a statutory exemption *within FOIA*.

In its opposition to Fox Business's motion, the Board suggests that, unlike the facts in *Buffalo Evening News*, in this case the Board's internal reports, e-mail traffic and documents exchanged between the Board and FRBNY "*do implicate* confidential commercial and financial information provided by the borrowers . . .." (Fed. Res. Opp. Mem. at 4) (Emphasis in original). However, the Board does not substantiate that the "implicated" information differs from the data sought by the FOIA Requests, *i.e.*, the identity of the borrowers, the amounts borrowed and the collateral pledged to secure the loans. Quite the contrary: in the very next breath, the Board points only to the "expectation of confidentiality in . . . the identity of the borrower, the amount of the loan, the collateral pledged and the interest rate of the individual loans." *Id*. Following the reasoning of *Buffalo Evening News*, therefore, the Board may not rely upon Exemption 4.

## II

### THE BOARD'S SPECULATION ABOUT THE PROSPECT OF COMPETITIVE HARM TO THE BORROWERS IS OF NO EVIDENTIARY VALUE AND IS UNDERMINED BY THE STALENESS OF THE INFORMATION

The <u>Board</u> has the burden of justifying its act of withholding records requested under FOIA. 5 U.S.C. § 552(a)(4)(B). Nevertheless, in its opposition to Fox Business's motion, the Board seeks to distract the Court's attention from its failure to meet that burden by stating that "[p]laintiff presents no declarations to support its speculation, based on TARP information disclosure, that financial institutions and primary dealers borrowing at the DW and SCLFs would not suffer competitive injury if the information sought in its request were released. (Fed. Res. Opp. at 6). But it is not <u>Fox Business's</u> burden to disprove the possibility of competitive harm; it is the <u>Board's</u> burden to justify withholding records under Exemption 4 by showing that such injury is likely. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (exemptions "must be narrowly construed," and "the burden is on the agency to sustain its action").

8

A.  **The Board, Not Fox Business, Relies Upon Speculation**.

If any party to this action has come forward with speculation, it is the Board, not Fox Business that has done so. As set forth more fully in Fox Business's opposition to the Board's motion for summary judgment, the Board's proof is riddled with phrases describing imagined competitive harm, but short on empirical data, *e.g.*, "there is a real concern that market participants would draw adverse conclusions about the credit worthiness and viability of the issuers" (Baum Decl. at ¶¶ 15, 16); "[w]hile the speculation about an issuer might have no basis in fact, there is a very real possibility that the rumors [of a bank's use of the Discount Window or PDCF] could place this institution in a weakened condition vis-à-vis its competitors, particularly in these times of market stress" (McLaughlin Decl. at ¶ 23), and so forth.

Moreover, not only does the Board fail to meet its own burden of proof and then try to confuse the subject by pretending that Fox Business has to prove a negative, but the record demonstrates that Fox Business has in fact adduced evidentiary facts disproving the likelihood that borrowers would be "stigmatized" by disclosure of their borrowing. In our separate submission, Fox Business showed that major financial institutions, some of which have been the subject of news reports concerning their financial difficulty, have themselves publicly reported their borrowing from the Federal Reserve System's new liquidity facilities. *See* Declaration of Terence W. McCormick dated April 17, 2009, attaching portions of annual reports on Form 10-K of JPMorgan Chase & Co., Citigroup, Inc., and Merrill Lynch & Co., Inc. [Doc. No. 24]. Far from running away from the Federal Reserve, these institutions continue to use those facilities.

B.  **Competitive Harm is Impossible Because the Information Is Stale**.

The Board's speculation is undermined not only by operation of law and the contrary evidence adduced by Fox Business, but by simple common sense. The information sought by

the FOIA Requests submitted by Fox Business would have no adverse competitive impact upon the borrowers for the obvious reason that, from the market's perspective, the requested information is stale. As Mr. Madigan asserts in his declaration, the Discount Window is a "back-up source of liquidity for institutions that may not have access to ordinary, market sources of funding on a short-term basis." (Madigan Decl. at ¶ 23). The operative word is "short-term," running from overnight lending to a maturity of 90 days. Thus, as to the particular records sought by the FOIA Requests, which span a period from four to twenty months, it follows that the borrowing has been repaid a long time ago. The fact, for example, that a given bank borrowed overnight funds from the Discount Window in the summer of 2007 and repaid the sums the next day would hardly make for a particularly damning "stigma" in May of 2009, empowering a competitor to gain some unfair advantage. The Board's only answer to this point is a cryptic, self-serving forecast that "the time-lag would almost certainly be longer than the four- to nineteen month [sic] suggested [by Fox Business]." (Fed. Res. Opp. Mem. at 14). The Board does not deign to elaborate further, *e.g.*, as to how long that "time-lag" lasts before the information ceases to be potentially damaging – and it certainly had not done so with <u>evidence</u>.

As the Board puts it, "[b]ecause neither the Board nor the Federal Reserve Banks disclose borrower-specific information . . . it is difficult to pinpoint such a date with certainty." (Fed. Res. Opp. Mem. at 13). Taken to its logical conclusion, the Board's argument would allow it to withhold information regarding the use of its facilities forever. FOIA affords the Board no such deference in this regard. And for institutions that have already failed, *e.g.*, IndyMac, Lehman, *etc.*, the risk of competitive harm is already over.

On the other hand, from the point of view of the news media and the public, this information is anything *but* stale, and requires immediate disclosure. Our representatives in

10

Congress, academics, professionals and the people of the United States generally are entitled to know whether the nation's central bank, <u>in its stewardship of our money supply</u>, is succeeding in its mission to stimulate private lending and jump-start the economy.

### III

### DOCUMENTS HELD BY THE FEDERAL RESERVE BANKS IDENTIFYING BORROWERS, LOAN AMOUNTS AND COLLATERAL ARE RECORDS OF THE BOARD

As the Board acknowledges, its own FOIA regulations define "Records of the Board" to include, among other rules, the following definition:

> all information coming into the possession and under the control of the Board, any Board member, <u>any Federal Reserve Bank</u>, or any officer, employee, or agent of the Board or of <u>any Federal Reserve Bank</u>, in the performance of functions for or <u>on behalf of the Board</u> that constitute part of the Board's official files …. 12 C.F.R. § 261.2(i)(1)(i) (emphasis supplied).

Evidently, when the FRBNY and the FRBB established their emergency liquidity facilities, they did so under the direction and <u>on behalf of</u> the Board.  As the Board itself explained in its own motion for summary judgment:

> In response to the current financial crisis, the Board has authorized the Federal Reserve Banks to initiate a number of additional, temporary special credit and liquidity facilities ("SCLFs") to relieve severe liquidity strains in the market, reduce risks to financial stability, and strengthen the effectiveness of monetary policy in addressing risks to the outlook for growth and inflation.  Several of these temporary, emergency facilities are the focus of the plaintiff's FOIA requests.

(Fed. Res. SJ Mem., dated March 27, 2009, at 3).  Thus, the FRBs were working at the behest of the Board in the execution of the nation's central banking function.[4]  Further, there is nothing in the record to indicate that the FRBs established, for example, the PDCF or the CPFF independently of the Board to establish separate monetary policies in their respective Districts.

---

[4] The Board confirms this point, stating in its principal submission that "[s]ystem rulemaking authority is vested in the Board, which may not delegate this function.  12 U.S.C. § 248(k)."  (Fed. Res. SJ Mem., dated March 27, 2009, at 44).

11

Nevertheless, the Board's opposition to Fox Business's motion for summary judgment rests upon an exercise in hair-splitting. Relying heavily upon its claim to "deference" in the interpretation of its regulation, the Board seeks to argue that the words of the above-quoted regulation do not mean what they say, urging that FRBs do not create records <u>on behalf of</u> the Board unless they are acting pursuant to enumerated powers "delegated" to them by the Board:

> [T]he Federal Reserve Banks are not acting under Board-delegated authority when they lend at the [Discount Window] and SCLFs, or when the FRBNY conducts OMOs, because Congress gave the twelve Federal Reserve Banks independent statutory authority to lend and to buy and sell securities in the open market under rules and policies promulgated by the Board or the FOMC. The Board could not "delegate" lending or OMO authority to the Federal Reserve Banks because the Board, a federal government agency, does not itself have authority to lend at the [Discount Window] or SCLFs, or to buy and sell securities in the open market.

(Fed. Res. Opp. Mem. at 8-9). This is an absurd and transparently self-serving interpretation of the FOIA regulation that is entitled to no deference whatsoever.

Naturally, there are certain functions of the Board that can be and are delegated to the FRBs, including a broad range of direct banking supervision functions. *See* 12 C.F.R. § 265.11 (Functions delegated to Federal Reserve Banks). But nothing in the Federal Reserve Act or the regulations provides that those "delegated" functions are the sole activities that an FRB may be performing <u>for or on behalf of the Board</u> for purposes of 12 C.F.R. § 261.2(i)(1)(i). Indeed, the Board fatally undermines its "delegation" argument when it protests that "disclosure of the withheld information would impair the Board's ability – <u>through Federal Reserve Bank funding facilities</u> – to address strains in financial markets and to effectively pursue its statutory objectives." (Fed. Res. SJ Mem. at 29) (emphasis added).[5] The Board cannot have it both ways; if the FRBs are carrying out the Board's policy of addressing "strains in the financial markets,"

---

[5] The Board's avoidance of 12 C.F.R. § 261.2(i)(1)(ii) and 12 C.F.R. § 261.3(a) similarly asks the Court to assume, in essence, that the FRBs have not been carrying out the nation's central banking function in response to the liquidity crisis. (Fed. Res. Opp. Mem. at 10).

12

then the Board may not simultaneously claim that the FRBs are not engaged in "the performance of functions <u>for or on behalf of the Board</u>" for purposes of 12 C.F.R. § 261.2(i)(1)(i). Records generated by the FRBs in that function are, by regulation, records of the Board.

The Board predictably cites *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 207 (2d Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007), for the proposition that an agency's interpretation of its regulation is entitled to "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" (internal citation omitted). However, as Fox Business previously established, the consequence of FOIA's *de novo* review requirement is that the agency's view on the applicability of FOIA exemptions is <u>not</u> entitled to the deference that would otherwise attach to agency determinations. *See United States Dep't of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 755 (1989) (distinguishing *de novo* review under FOIA from review of other agency action under the Administrative Procedure Act). Moreover, even if the Board were entitled to deference with respect to the interpretation of its regulations, there are boundaries to that deference that defeat the Board's position here. The deference described in cases such as *Bruh* does not permit an agency to contradict the express intention of Congress which, in the FOIA context, established a regime of expansive disclosure subject to nine, narrowly enumerated exceptions. Moreover, when a federal agency's interpretation conflicts with the plain language of the particular regulation, the federal courts are <u>not</u> obliged to defer to the agency's interpretation. *See Christensen v. Harris County*, 529 U.S. 576, 588 (2000); *Lin v. United States Dep't of Justice*, 459 F.3d 255, 262 (2d Cir. 2006). The Board has crossed the line in both respects.[6]

---

[6] The Board's "delegation" argument fails, of course, to justify its withholding of the many documents identified in the *Vaughn* indexes that are held by the Board itself, whether deleted or otherwise.

13

## IV

## THE NARROW EXEMPTION FOR GOVERNMENT COMMERCIAL INFORMATION IN *FOMC v. MERRILL* IS IRRELEVANT TO FOX BUSINESS'S FOIA REQUESTS

In its opposition papers, the Board now concedes that it relies upon none of the traditional civil discovery privileges to support its claim under FOIA Exemption 5. Thus, it is undisputed that the documents exchanged between the Board and the FRBs are <u>not</u> exempt from disclosure under, for example, the deliberative process privilege.[7] Since the Board does not assert that the withheld documents involve the give and take of agency decision-making, the sole task remaining is to determine whether the Board may rely upon the limited privilege for government commercial information, under *Federal Open Market Committee of the Federal Reserve System v. Merrill*, 443 U.S. 340 (1979).

The problem with the Board's argument under *FOMC* is that the Supreme Court established within Exemption 5 a qualified, and expressly temporary exemption that would last no longer than necessary to protect the government's commercial interest in pending open market transactions. *FOMC's* carefully circumscribed limitation on the agency's power to withhold commercially sensitive documents therefore represents a stumbling block to the Board's transparent purpose in this case, namely, to withhold ***all*** records of institutional borrowing from its emergency liquidity facilities indefinitely. In a vain attempt to circumnavigate the Supreme Court's holding, the Board now claims that it "does not argue that it has a commercial interest in consummation of [Discount Window] or SCLF loans in the Reserve Banks' capacity as lenders, but rather that the Board's own "commercial or monetary" interest in

---

[7] The Board's initial submission in support of its own motion for summary judgment at least implied that the Board was relying upon the deliberative process privilege. *See* Fed. Res. SJ Mem., dated March 27, 2009, at 34 ("The Reports were prepared by Board staff using data supplied by the Federal Reserve Banks and distributed to Board staff (with copies to the FRBNY) for use in formulating monetary policy and for Reserve Bank supervision purposes . . ."). However, the Board now disavows any such theory, and relies entirely upon *FOMC*.

14

the use of the [Discount Window] as a lever of monetary policy would significantly be harmed by disclosure." (Fed. Res. Opp. Mem. at 13). Put another way, according to the Board's logic, for the same reason that the *FOMC* Court determined that release of the Daily Policy Directive would have interfered with open market operations during the month when the Daily Policy Directive was in effect, the Board here maintains that release of even months-old information regarding Discount Window borrowing and SCLF usage would interfere with the Board's policy of encouraging member banks to resolve liquidity crises at the FRBs – in perpetuity.

The Board's argument turns *FOMC* completely on its head, and seeks to sneak in an "agency effectiveness" exemption through the back door – in direct contravention of the Supreme Court's holding in *FOMC*. As the Supreme Court observed in *FOMC*:

> [The Federal Open Market Committee's] principal argument, instead, is that Exemption 5 confers general authority upon an agency to delay disclosure of intra-agency memoranda that would undermine the effectiveness of the agency's policy if released immediately. This general authority exists, according to the FOMC, even if the memoranda in question could be routinely discovered by a party in civil litigation with the agency.
>
> We must reject this analysis. First, since the FOMC does not indicate that the asserted authority to defer disclosure of intra-agency memoranda rests on a privilege enjoyed by the Government in the civil discovery context, its argument is fundamentally at odds with the plain language of the statute. In addition, the Committee's argument proves too much. Such an interpretation of Exemption 5 would appear to allow an agency to withhold any memoranda, even those that contain final opinions and statements of policy, whenever the agency concluded that disclosure would not promote the "efficiency" of its operations or otherwise would not be in the "public interest." This would leave little, if anything, to FOIA's requirement of prompt disclosure, and would run counter to Congress' repeated rejection of any interpretation of the FOIA which would allow an agency to withhold information on the basis of some vague "public interest" standard.

443 U.S. at 353-54. (Internal citations omitted).

In sum, Fox Business understands the Board's Exemption 5 argument only too well, as did the Supreme Court in 1979. This Court should reaffirm the holding of *FOMC*, compel the Board to comply with the FOIA Requests and award Fox Business its attorney's fees.

## CONCLUSION

For all the foregoing reasons, Fox Business respectfully submits that its motion for summary judgment must be granted.

Dated:   New York, New York
         April 30, 2009

**MINTZ & GOLD LLP**


/s/ Steven G. Mintz
Steven G. Mintz
Terence W. McCormick
Paul Ostensen
470 Park Avenue South
10th Floor North
New York, N.Y. 10016-6819
Tel:  (212) 696-4848
Fax:  (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
ostensen@mintzandgold.com
*Attorneys for Plaintiff*
*Fox News Network, LLC*