UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FOX NEWS NETWORK, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civ. No. 09cv00272 (AKH) |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Katherine H. Wheatley (KW7931)
Associate General Counsel
Yvonne F. Mizusawa (YM5081)
Senior Counsel
Board of Governors of the Federal
  Reserve System
20th and C Streets, N.W.
Washington, D.C.  20551
Ph: (202) 452-3436
Fax: (202) 736-5615

April 30, 2009

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

1.    Plaintiff Has Failed to Show Bad Faith in the Board's Conduct of its Search ................... 1

2.    The Board Is Under No Obligation to Search Responsive Records at the Federal
      Reserve Banks, Which are Not Records of the Board Subject to a FOIA Request to
      the Board ....................................................................................................................... 11

3.    The Board Properly Withheld Information under the Third Prong of
      Exemption 4 ................................................................................................................... 13

4.    In the Alternative, the Board has Met its Burden Under Exemption 4 of Showing
      the Likelihood of Substantial Competitive Harm to Submitters of the Withheld
      Information ..................................................................................................................... 17

5.    The Board Properly Withheld Information Under Exemption 5 ....................................... 13

CONCLUSION ....................................................................................................................... 25

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FOX NEWS NETWORK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF GOVERNORS OF<br>THE FEDERAL RESERVE<br>SYSTEM,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civ. No. 09cv00272 (AKH)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's Stipulation and Order, dated January 26, 2009, Defendant, the

Board of Governors of the Federal Reserve System ("Board"), files its reply to plaintiff Fox

News Network LLC's Memorandum of Law in Opposition to Defendant's Motion for Summary

Judgment, filed April 17, 2009 ("Plaintiff's Opposition").  Plaintiff has failed to meet the criteria

necessary for summary judgment in a case under the Freedom of Information Act, 5 U.S.C.

§ 552 ("FOIA").  Because plaintiff has failed to make the necessary showing, and the Board has

met its burden, as demonstrated in its Motion for Summary Judgment, and supporting brief and

declarations, filed March 27, 2009 ("Board's Motion"), and its April 17, 2009 Opposition, the

plaintiff's Motion should be denied and the Board's Motion should be granted.

**1.  Plaintiff Has Failed to Show Bad Faith in the Board's Conduct of its Search**

Plaintiff attempts to create an issue of fact where none exists regarding the adequacy of

the Board's search.  Plaintiff's Opposition at 5-16.  As set forth in the Memorandum of Points

and Authorities in Support of Defendant's Motion for Summary Judgment, filed March 27, 2009 ("Board's SJ Brief") at 8-17, and in the supporting Thro Decl., Vaughn Indices (filed February 19, 2009) and Supplemental Vaughn Index (Exh. I to Thro Decl.), the Board's search meets the standard of adequacy set forth in the relevant cases. The Board is required to conduct a "thorough search" for responsive documents and give "reasonably detailed explanations why any withheld documents fall within an exemption." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir.), cert. denied, 513 U.S. 823 (1994). "'[T]he factual question … is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'" Grand Central Partnership v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (quoting Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). An agency "is not expected to take extraordinary measures to find the requested records …." Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002).

As set forth in Board's SJ Brief at 8-17, the search was reasonably designed to locate and uncover responsive information. The Board searched both of the two divisions that were reasonably likely to have responsive documents in response to 19 prior, similar Facilities Requests, Thro Decl., ¶¶ 8, 10, 11, 20 -- indicating that the Board had revisited the same search approximately 20 times (including plaintiff's requests) since April, 2008, making it "reasonably" likely that responsive information had been uncovered. It contacted 13 staff members in those two divisions, id., ¶¶ 11, 12, 20, 22, and had follow-up discussions with 6 staff members in connection with the First and Second FOIA Requests. Thro Decl., ¶¶ 12, 20. The Board's attorney responsible for supervising the processing of FOIA requests personally reviewed information compiled in response to the 19 prior Facilities Requests for information responsive to the First and Second FOIA requests. Thro Decl, ¶¶ 12, 20; see Inner City Press/Community

on the Move v. Board of Governors, 1998 U.S. Dist. LEXIS 15333 at *9 (S.D.N.Y., Sept. 30, 1998), aff'd, 182 F.3d 900 (2d Cir. 1999) (FRB's search for responsive documents, which included extensive personal investigation by Board attorney responsible for supervising processing of FOIA requests, was "by any standard … thorough and adequate").  These efforts yielded approximately 6008 pages of exempt information listed on the February 19, 2009 Vaughn Indices.

In addition, when the Board determined in connection with preparing declarations for this lawsuit that there may have been additional responsive documents, it went back and conducted an additional search, contacting additional Board members and staff, that yielded approximately 178 additional pages of exempt information listed on the Supplemental Vaughn Index.  Thro Decl., ¶¶ 26-29 and Exh. I.  The fact that the Board went back and conducted an additional search at this stage is further evidence of the Board's good faith, not the reverse.  Maynard v. CIA, 986 F.2d 547, 565 (1st Cir. 1993) ("forthright disclosure" of additional withheld documents "suggests good faith on the part of the agency.")

To justify discovery once the agency has met its burden, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate."  ACLU v. U.S. Dep't of Defense, 389 F. Supp. 2d 547, 553 (S.D.N.Y. 2005) (Hellerstein, J.), aff'd, 543 F.3d 59 (2d Cir. 2008) (citing Carney, supra, 19 F.3d at 812).  The plaintiff "cannot rely upon 'mere speculation' that responsive documents have not been produced."  Inner City Press, supra, 1998 U.S. Dist. LEXIS 15333 at *9 (quoting Carney, supra, 19 F.3d at 812).

Plaintiff argues that the Board has "re-defined" its FOIA Requests to improperly narrow their scope, citing language in the Thro Decl. stating "'I interpreted the First and Second FOIA Requests as seeking information regarding specific items pledged as collateral by specific borrowers for specific borrowings, rather than as seeking information on the general categories or types of collateral actually pledged or available.'" Plaintiff's Opposition at 6-7 (quoting Thro Decl., ¶ 13). The Board's interpretation of the FOIA Requests, however, is plainly set forth in its response letters to the plaintiff, which are consistent with ¶ 13 of the Thro Decl. See Thro Decl., Exh. G at 1 n.2 (January 6, 2009 response to Second FOIA Request) (noting that the Board has interpreted "your request as seeking detailed information regarding specific items pledged as collateral by specific borrowers for specific borrowings, rather than as seeking information on the general categories or types of collateral actually pledged."); and Exh. H at 1 n.1 (January 16, 2009 response to First FOIA Request) (same).

The Board's interpretation was a reasonable reading of plaintiff's FOIA Requests, which sought "an accounting of the collateral provided by these institutions in exchange for the lending," Thro Decl., Exh. A at 2 (First FOIA Request); and "[f]or each institution identified in response to number '1'... records sufficient to identify all collateral pledged by each such institution..." Thro Decl., Exh. C at 1 (Second FOIA Request). As the Board explained in its January 16, 2009 response to the First FOIA Request, "information on *types* or *categories* [of] securities eligible for posting as security for each of the facilities is publicly available on the websites of the Board and the Federal Reserve Bank of New York." Thro Decl., Exh. H at 1 n.1 (emphasis supplied). Since general information regarding types or categories of securities

eligible for posting is public, the Board's reading of plaintiff's FOIA Requests to encompass specific items posted as collateral for specific loans is reasonable.[1]

A FOIA requester who believes that the Board has denied access to records by improperly narrowing its request can appeal the Board's determination, 12 C.F.R. § 261.13(i), or file another FOIA request. Here, plaintiff did not appeal the Board's determination on the Second FOIA Request in the January 6, 2009 letter and *filed its Complaint on January 12th before ever receiving or reading* the January 16, 2009 response. The plaintiff's claim that the Board improperly narrowed the scope of its FOIA Request does not obligate the Board at this juncture to go back and begin its search anew. See Kowalczyk v. U.S. Dep't of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996) ("[a] reasonable effort to satisfy [a] request does not entail an obligation to search anew based upon a subsequent clarification.")

Plaintiff's argument that the Board has "shifted" its "representations to Fox Business regarding the existence of documents evidencing the pledge of collateral" also misrepresents the facts. Plaintiff's Opposition at 7; see also id. at 12-14. The Vaughn Indices at pp. 4-5 describe a document entitled "Draft Procedures for Monitoring Collateral Requirements on Long Term Primary Discount Window and TAF Loans" (Document Category 4). The Vaughn Indices state that the Board has withheld information, totaling between 1-2 pages, which are "inserts for illustrative purposes listing a few borrowers at the DW and TAF, the value of collateral pledged by those borrowers at the DW and TAF, and additional collateral required for specific loans ...." This information was referenced in the Board's response letters to the plaintiff, which stated "[s]taff also located portions (less than one page) of two documents (draft procedures for

---

[1] Likewise, for OMOs, because "[i]nformation on the terms, rates, and conditions of OMOs, specific OMO operations, and the identity of primary dealers is accessible through the public website" of the FRBNY, as the Board informed the plaintiff, Thro Decl., Exh. G at 2, Ms. Thro reasonably "interpreted the First and Second FOIA Requests as seeking specific information on institutions participating in OMOs on specific days." Thro Decl., ¶ 21.

monitoring collateral requirements for long term loans under the TAF) which include, for illustrative purposes the names of a few borrowers, among other data." Thro Decl., Exhs. G and H at 4. These 1-2 pages of collateral information, among some 6186 total pages withheld, is consistent with any representation the Board may have made that it has "no" or "virtually no" information regarding specific collateral pledged by specific borrowers for specific loans. Indeed, the fact that the Board was able to locate these fractional slices of responsive collateral information in one August 2008 document is testament to the thoroughness of its search.

Plaintiff's claim that "the Board revealed for the first time in the Supplemental <u>Vaughn</u> index that potentially hundreds of pages of documents detailing collateral were, in fact, in the Board's possession all along" is also specious. Plaintiff's Opposition at 8. The Supplemental <u>Vaughn</u> Index, Thro. Decl., Exh. I at 1-2 (Description of Reports), states "[e]ach Daily PDCF Collateral Report contains some limited information responsive in part to the First and Second FOIA Requests, in particular, *the names of primary dealers* receiving loans at the PDCF on dates listed in the Reports, the *amount* of overnight borrowing by each primary dealer, and *total borrowings* by each primary dealer on specific dates. … The *remainder of information* in the Reports and e-mails (the majority of information) *is non-responsive. The Reports and e-mails do not contain responsive information regarding specific collateral pledged for any loan."* (emphasis supplied). Thus, there is *no* responsive information regarding collateral in the reports or e-mails listed on the Supplemental <u>Vaughn</u> Index. If plaintiff had taken the time to read the information that was provided, many of its questions regarding the adequacy of the search could have been answered.[2]

_____

[2] Plaintiff's cursory reading of the <u>Vaughn</u> Indices also is apparent from of Plaintiff's Opposition at 6, n. 2, which states "Ms. Thro additionally discloses that the Board is in possession of 94 pages of e-mails containing records responsive in part to the First FOIA Request, derived from or duplicating information contained in the Origination Report." (citing Thro Decl., ¶ 18). This

Moreover, the Board's declarations explain why it lacks information regarding specific items pledged as collateral by specific borrowers for specific loans, and specific, transaction level information regarding OMOs.  That information is maintained by the Federal Reserve Banks, the lenders in these transactions, or their agents.  Madigan Decl, ¶¶ 16-17; McLaughlin Decl., ¶¶ 9, 17; Logan Decl., ¶¶ 28-29; Palladino Decl., ¶ 13; Baum Decl., ¶ 13.  In the case of OMOs, information regarding specific transactions by specific institutions on specific dates is maintained by the FRBNY, the buyer and seller of securities, or its agents.  Burke Decl., ¶ 17; Madigan Decl., ¶ 17; Thro Decl, ¶ 21.  Thus, the absence of this information at the Board is not surprising, and does not indicate any inadequacy of the Board's search.

Plaintiff next argues that the Board's search was inadequate because some possibly responsive e-mails were deleted *before the Board received plaintiff's FOIA Requests*.  Plaintiff's Opposition at 10, 14-15.  As explained in ¶ 26 of the Thro Decl., in following up on information that two Board members and a Board staff member had received e-mails from the FRBNY attaching a weekly report containing the names of primary dealers utilizing FRBNY liquidity facilities, and some general collateral information, as well as additional e-mails from the FRBNY attaching a second weekly report, Ms. Thro learned that these three individuals "had not retained any copies of either type of these reports or the e-mails (either paper or electronic) for the relevant time period … that it had been their practice since receiving the e-mails and reports to delete or destroy them shortly after receiving them because there was no need to retain copies of this information to perform their duties for the Board … and that … there had been no copies [of this information] when we received the First and Second FOIA Requests."  Thro Decl., ¶ 26.  The law is clear that FOIA applies only to agency records in the agency's possession and control

---

"additional[]" 94 pages of e-mails is not a new discovery, but is listed as Category 5, pp. 5-17, of the <u>Vaughn</u> Index for the First FOIA Request, which plaintiff has had since February 19, 2009.

on the date the FOIA request was received, and an agency has no obligation to reconstruct records that were routinely deleted or disposed of.  Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam) ("the fact that responsive documents once existed does not mean that they remain in the [agency's] custody today or that the [agency] had a duty under FOIA to retain the records"); Jones v. FBI, 41 F.3d 238, 249 (6th Cir. 1994) (no remedy for documents destroyed before a FOIA request is received).

Although the plaintiff argues that "[s]imply because an e-mail has been 'deleted,' does not mean that copies of it do not exist," Plaintiff's Opposition at 14, Ms. Thro's declaration plainly states that the Board has no copies of this information, "either paper or electronic."  Thro Decl., ¶ 26.  This declaration detailing her inquiry into, and the ultimate absence of, this information is "'accorded a presumption of good faith,'" Carney, supra, 19 F.3d at 812 (quoting Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)); accord ACLU, supra, 389 F. Supp. 2d at 553, and plaintiff's speculative claim that copies might still exist is not sufficient to overcome this showing.  Carney, supra, 19 F.3d at 813.

Plaintiff also has no standing in this FOIA suit to challenge the Board's compliance with the Federal Records Act, see Plaintiff's Opposition at 14-15, which actions may only be brought by the Attorney General.  Kissinger v. Reporter's Committee for Freedom of the Press, 445 U.S. 136, 147 (1979) (no private right of action for violation of Federal Records Act).  The routine deletion of these e-mails does not suggest that the search was inadequate, and the Board's forthright disclosure of the disposition of this information is indicative of its good faith. Maynard, supra, 986 F.2d at 565.

Moreover, the fact that these deleted e-mails, and the documents identified on the Supplemental Vaughn Index, were not identified until a second round of searching does not raise

issues of inadequacy.  The Second Circuit has squarely held the fact "[t]hat some documents were not discovered until a second, more exhaustive search was conducted does not warrant overturning the district court's ruling" that the search was adequate.  Cuomo, supra, 166 F.3d at 489.  The situation here is analogous to that in Cuomo, where the agency's initial search in "the four offices most likely to contain such documents" turned up 1000 pages, and a second search turned up "an additional seventy-nine documents …."  Id.  In this case, the Board's initial search, in the only two divisions reasonably likely to have responsive information, turned up approximately 6008 responsive pages.  Thro Decl., ¶ 22.  Since the plaintiff elected to forgo an administrative appeal, some of the follow-up and review that would normally take place in the administrative process took place in the context of this litigation, which follow-up necessitated an additional search.  This second search, encompassing additional Board members and staff, yielded approximately 178 more pages.  Thro Decl., ¶¶ 26-29.  "[A]n agency's search need not be perfect, but rather need only be reasonable."  Cuomo, supra, 166 F.3d at 489.  The second round of searching raises no question of the adequacy of the defendant's efforts.

The Board's failure to search documents at the FRBNY or other Reserve Banks also casts no doubt on the adequacy of its search.  Plaintiff's Opposition at 9-10.  An agency has no obligation to search documents that are outside of its possession, custody, or control.  Jones-Edwards v. NSA, 196 Fed. Appx. 36, 38 (2d Cir. 2006) (unpublished).  As set forth in the Board's SJ Brief at 37-52 and Defendant's Board of Governors of the Federal Reserve System's Opposition to Plaintiff's Motion for Summary Judgment, filed April 17, 2009 ("Board's Opposition") at 8-12, responsive records at the Federal Reserve Bank are not "agency records" subject to a FOIA request to the Board, and do not fall within the narrow class of records at the

Reserve Banks that are Board records by regulation, and the Board had no obligation to search them.

Last, plaintiff's claim that the Board has failed to account for the raw data used to prepare the Origination Reports, Remaining Term Reports and Emergency Credit Reports (collectively "Reports") raises no issue of bad faith. Plaintiff's Opposition at 5-6, 13. The Board has stated that the 5912 pages of Reports listed on its <u>Vaughn</u> Indices were generated "using raw data provided to Board staff on a daily basis by the Federal Reserve Banks (which obtained and derived the information from records of transactions with the borrowing institutions)." Vaughn Indices, Categories 1-3, Description of Report and Basis for Withholding. Despite the Board's repeated searches in the only two divisions reasonably likely to have responsive information, and discussions with some 13 knowledgeable staff members and its follow-up search of additional Board members and staff, see, <u>supra</u>, pp. 3, 7, 9, no information was brought to staff's attention that there was raw data in existence on the date of plaintiff's FOIA Requests that might contain additional responsive information. <u>See</u> Thro Decl., ¶¶ 12-14, 20. Plaintiff's argument that the Board failed to account for the raw data amounts to nothing more than "mere speculation" that something else might be out there, and is not sufficient to overcome the Board's showing. <u>Carney</u>, <u>supra</u>, 19 F.3d at 813 (plaintiff's unsupported allegation that agency "concealed the existence of records and mischaracterized other records," did not show the search was inadequate).

As demonstrated above and in the Board's SJ Brief at 7-18, the Board conducted an adequate search and the plaintiff has not met its burden of showing bad faith or that summary judgment is otherwise inappropriate. As a result, the plaintiff is not entitled to discovery regarding the adequacy of the search. <u>Wood</u> v. <u>FBI</u>, 432 F.3d 78, 85 (2d Cir. 2005); <u>ACLU</u>,

supra, 389 F. Supp. 2d at 553 (citing <u>Carney</u>, <u>supra</u>, 19 F.3d at 812). Because plaintiff has failed

to make the required showing, summary judgment should be awarded in favor of the Board.

<u>Ferguson</u> v. <u>FBI</u>, 83 F.3d 41, 43 (2d Cir. 1996); <u>Carney</u>, <u>supra</u>, 19 F.3d at 812.

### 2. The Board Is Under No Obligation to Search Responsive Records at the Federal Reserve Banks, Which are Not Records of the Board Subject to a FOIA Request to the Board

Plaintiff argues that the Board is obligated to search responsive records at the FRBNY

and FRBB because "the Board and FRBs are [entangled, thereby] fatally undermining the

Board's position that records located at the FRBs are somehow distinct from those of the Board

for purposes of FOIA." Plaintiff's Opposition at 38. The fact that the FRBNY, FRBB, other

Federal Reserve Banks and the Board work together as components of our nation's central

banking system is irrelevant to this action unless that entanglement results, legally, in the

creation of *one agency* for FOIA purposes – a proposition for which Fox Business has provided

no support. Indeed, the fact that the FOMC – another component of the nation's central bank,

also created under a separate section of the Federal Reserve Act – is a separate agency for FOIA

purposes, <u>see</u> <u>FOMC</u> v. <u>Merrill</u>, 443 U.S. 340, 352 (1979), supports the Board's position that

these separate components are *not* one FOIA agency.[3]

It is undisputed that the First FOIA Request and the Second FOIA Request were

addressed to the Board and e-mailed (First FOIA Request) and mailed (Second FOIA Request) to

the Board's offices in Washington D.C., not to the FRBNY, FRBB, or any other Reserve Bank.

<u>See</u> Complaint, ¶¶ 17 and 22; Thro Decl., ¶¶ 4, 6 and Exhs. A and C. Plaintiff has made no

allegation that it submitted similar requests to the FRBNY or FRBB or another Reserve Bank,

---

[3] See FRA § 12A, 12 U.S.C. § 263 (creating the FOMC); *cf* FRA § 4, 12 U.S.C. § 341 (creating the Reserve Banks). The FOMC publishes its own regulations and maintains its own records, which are separate from Board records, for FOIA purposes. 12 C.F.R. Part 271.

and the Board, not the FRBNY or FRBB, is the defendant in this case.  Accordingly, unless the

Board had some legal obligation to search and obtain records from FRBNY or FRBB, the

records of those Reserve Banks are not at issue in this litigation.  And as we established in our SJ

Brief, no such legal obligation exists.

It is well settled in the Supreme Court and Second Circuit that the Board need not provide

records under FOIA unless the documents were: (i) *created* or *obtained* by the agency; *and* (ii)

under *agency control* at the time of the FOIA request.  Board's SJ Brief at 35 (citing U.S. Dep't

of Justice v. Tax Analysts, 492 U.S. 136, 144-45 (1989); Cuomo, supra, 166 F.3d at 479).  The

Court lacks subject matter jurisdiction to order production of records that do not meet this two-

part test as FOIA jurisdiction depends upon a finding that the agency: (1) "improperly;" (2)

"withheld;" (3) "agency records."  Board's SJ Brief at 38-39 (quoting 5 U.S.C. § 552(a)(4)(B)

and Kissinger, supra, 445 U.S. at 150).

As set forth in the Board's SJ Brief at 38-41, the Board neither created nor obtained

responsive records at the FRBNY and FRBB (except as noted on the Vaughn Indices or

Supplemental Vaughn Index), and the Court lacks subject matter jurisdiction to order their

production.[4]

---

[4] The D.C. Circuit's decision in Burka v. U.S. Dep't of Health and Human Services, 87 F.3d 508, 515 (D.C. Cir. 1996), cited in Plaintiff's Opposition at 41-42, does not suggest a different result. In that case, the court found that records in the hands of a government contractor were "agency records" where the agency had "ordered creation of the materials, plans to take physical possession of the [records] at the conclusion of the project, has indicated that it will disclose the information after its publication schedule …, and has read and relied significantly on the information in writing articles and developing agency policies." Id.  None of those factors exists with respect to responsive FRBNY or FRBB records that have not been provided to the Board. See Thro Decl., ¶ 31; Palladino Decl., ¶¶ 12-13; McLaughlin Decl., ¶¶ 8-9, 16-17; Logan Decl., ¶¶ 11-12, 27-29; Burke Decl., ¶¶ 17, 22; Baum Decl., ¶¶ 12-13.  Likewise Defense of Animals v. NIH, 543 F. Supp. 2d 70, 76-77 (D.D.C. 2008), where the court found that clinical files relating to chimpanzees located at a government contractor were "agency records" where the agency "owns the … facility where the requested documents are located," "owns the chimpanzees located at [the facility] … and also obtained the chimpanzees' clinical records [which] … are

Whether or not the Federal Reserve Banks are "agencies" for FOIA purposes, as suggested in Plaintiff's Opposition at 38-39, is not germane, because the FOIA Requests were directed to the Board, not to any Reserve Bank. Stated otherwise, if responsive records existed, for example, at the Department of the Treasury or a private bank, it would not matter under FOIA that Treasury is an agency and a private bank is not. All that would matter is whether the Board had created or obtained records from one of those entities and whether they were under Board control at the time of the request. As set forth above, and in Board SJ Brief at 38-41, it did not create or obtain such records. Moreover, as set forth in the Board's SJ Brief at 44-52 and Board's Opposition at 8-12, responsive records at the FRBNY and FRBB do not fall within the narrow category of records at the Federal Reserve Banks that are "Board records" by regulations.[5] Accordingly, the Board is entitled to summary judgment on the "agency records" issue.

### 3. The Board Properly Withheld Information under the Third Prong of Exemption 4

As set forth in Board's SJ Brief at 26-33, the Board properly withheld information under the so-called "third prong" or "program effectiveness" branch of Exemption 4. The Court may grant the Board's SJ Motion on the basis of program effectiveness alone, and need not even reach the second, competitive harm prong of exemption 4 or exemption 5, which provide alternative grounds for withholding. Plaintiff presents no evidence to dispute the Board's declarations demonstrating that disclosure would impair its ability to fulfill statutory functions under sections 2A, 10B and 13(3) of the FRA. Compare Board's SJ Brief at 29-33 (discussing

---

subject to onsite inspection by [the agency]," presents very different facts from those demonstrated in the Board declarations cited above.

[5] Because the arguments regarding the scope of the Board's regulations in Plaintiff's Opposition at 40-42 were addressed in the Board's Opposition at 8-12, the Board will not repeat those arguments here, but incorporates them by reference.

Board's evidence) with Plaintiff's Opposition at 32-34 (citing no evidence, but only legal argument, to dispute Board's showing).  As plaintiff has failed to supply "tangible evidence" contradicting the Board's showing that its ability to perform statutory functions *would* be impaired, the Board is entitled to summary judgment based on the third prong of exemption 4. Carney, supra, 19 F.3 at 812.

The Board filed declarations from a senior Board officer and two senior officers at the FRBNY attesting that disclosure of borrower names and loan amounts at the DW and SCLFs would impair its ability: to "promote effectively the goals of maximum employment, stable prices and moderate long term interest rates" 12 U.S.C. § 225a, by using the DW to complement OMOs in achieving target short term interest rates; to use Federal Reserve Bank funding facilities to relieve liquidity strains in individual institutions and the banking system under section 10B; and to address unusual and exigent circumstances under section 13(3).  See Board's SJ Brief at 29-33.

Among other evidence, the director of the Board's Division of Monetary Affairs ("MA"), which supports the Board and FOMC in the conduct of monetary policy, Madigan Decl.¶ 1, asserts that "the publication of [the information at issue here] would lead to an increased reluctance of borrowers to use [Federal Reserve borrowing] facilities," and "if institutions are unwilling to access the DW for fear of public disclosure, this 'safety valve' role of the discount window is impaired, and the task of achieving a desired level of short-term interest rates through OMOs is greatly complicated … [adding to] uncertainty in financial markets and mak[ing] it more difficult for the Federal Reserve to achieve its statutory objectives …"  Id., ¶¶ 19, 32.  A senior vice president in the FRBNY's Markets group, responsible (along with other officers) for overseeing DW and PDCF operations, McLaughlin Decl., ¶¶ 1-2, 4, attests that "public[]

14

disclos[ure] … [of] details regarding which institutions are availing themselves of the Discount Window and the PDCF … would cause financial institutions to avoid using these liquidity tools – even when needed – to alleviate market pressures" and "the New York Fed would no longer be able to meet its mandate to promote orderly and well-functioning markets." Id., ¶ 24.

This evidence, and the other evidence discussed at the Board's SJ Brief at 29-33, is sufficient to meet the Board's burden. See Carney, supra, 19 F.3d at 813 (declarants must "describe the documents or classes of documents withheld and explain why they fall within an applicable exemption"). Plaintiff has submitted no declarations or evidence to dispute the Board's showing. As in Clarke v. U.S. Dep't of Treasury, 1986 U.S. Dist. LEXIS 29989 *5 (E.D. Pa. Jan. 28, 1986), where the Treasury relied on the "unopposed affidavit" of an acting assistant Treasury secretary that "releasing the requested information would harm the national interest because investors would be less likely to purchase government bonds ... if they knew the details … would be subject to public disclosure[,]" the Board's uncontested declarations meet its burden under the third prong of exemption 4 and it is entitled to summary judgment.

Plaintiff's legal arguments also cast no doubt on the Board's program effectiveness showing. Plaintiff argues that "no such 'third prong' has been recognized by the Second Circuit." Plaintiff's Opposition at 33. Program effectiveness, however, derives directly from footnote 17 of National Parks Conservation Ass'n v. Morton, 498 F.2d 765, 770 n. 17 (D.C. Cir. 1974), in which the D.C. Circuit cited FOIA's legislative history to suggest that "the problems of compliance and program effectiveness [are] governmental interests possibly served by this exemption." See 9 to 5 Org. for Women Office Workers v. Board of Governors, 721 F.2d 1, 8 (1st Cir. 1983) (citing fn.17 of National Parks as authority for program effectiveness); Comstock Int'l (U.S.A.), Inc. v. Export-Import Bank, 464 F. Supp. 804, 808 (D.D.C. 1979) (same).

There is no dispute that the Second Circuit has adopted the first two prongs of <u>National Parks</u> as the rule of decision in exemption 4 cases. <u>Inner City Press/Community on the Move</u> v. <u>Board of Governors</u>, 463 F.3d 239, 244 (2d Cir. 2006). There is no reason to think that the third "program effectiveness" prong, which derives directly from <u>National Parks</u>, is not good law in the Second Circuit as it is in the First and D.C. Circuits, <u>see</u> Board's SJ Brief at 26, although the Second Circuit has not expressly ruled on the issue. At least two district courts in the Southern District of New York have adopted the program effectiveness theory. <u>See</u> <u>Nadler</u> v. <u>FDIC</u>, 899 F. Supp. 158, 161-63 (S.D.N.Y. 1995), <u>aff'd</u> <u>on</u> <u>other</u> <u>gnds</u>, 92 F.3d 93 (2d Cir. 1996);[6] <u>Africa Fund</u> v. <u>Mosbacher</u>, 1993 U.S. Dist. LEXIS 7044 at *21 (S.D.N.Y. 1993).

Although the D.C. Circuit in <u>National Parks</u> "left the question of [program effectiveness] for another day," Plaintiff's Opposition at 33, many courts subsequently have applied the third prong, as discussed in Board's SJ Brief at 26-29.[7] Plaintiff's argument that the Supreme Court

---

[6] The Second Circuit affirmed on the basis of competitive harm to the FDIC (as receiver for a failed bank), and did not even reach the alternative exemption 4 argument presented by the agency. 92 F.3d at 96. In ruling on an alternative ground, the court did not reach an issue unnecessary to its decision, and did not "consciously avoid[] the issue" of program effectiveness, as the plaintiff argues. Plaintiff's Opposition at 33.

[7] Plaintiff thoroughly confuses the meaning of the D.C. Circuit's decision in <u>Critical Mass Energy Project</u> v. <u>NRC</u>, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc), <u>cert</u>. <u>denied</u>, 507 U.S. 984 (1993). <u>See</u> Plaintiff's Opposition at 3 and 33 n.16. In that decision, the D.C. Circuit found that "financial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." 975 F.2d at 879. That portion of the court's opinion, *which the Board does not rely on,* is not widely accepted in the courts including the Second Circuit. <u>See</u> <u>Inner City Press</u>, *supra*, 463 F.3d at 245 n.6 (declining to adopt *nostra sponte* the <u>Critical Mass</u> test for information voluntarily provided to the government). The <u>Critical Mass</u> *en banc* decision also, however, "reaffirm[ed] the <u>National Parks</u> test for determining the confidentiality of information submitted under compulsion," and did not overturn the panel's "adopt[ion of] the First Circuit's conclusion that the exemption [4] also protects a governmental interest in administrative efficiency and effectiveness." 975 F.2d at 879. Those portions of <u>Critical Mass</u> (including the latter quotation which the Board relies upon in Board's SJ Brief at 26) are not controversial and have by no means been rejected by the Second Circuit.

"squarely rejected 'administrative effectiveness'" as justification for withholding documents under Exemption 5" in <u>FOMC</u> v. <u>Merrill</u>, <u>supra</u>, is irrelevant. Plaintiff's Opposition at 33. The Supreme Court's concern in <u>Merrill</u> was that "general authority … to delay disclosure of intra-agency memoranda that would undermine effectiveness of the agency's policy …," 443 U.S. at 353, "would appear to allow an agency to withhold any memoranda …" on the grounds that disclosure "would not be in the public interest." <u>Id</u>. at 354. The "program effectiveness" basis for withholding under exemption 4 does not present the same concern because the agency *also* must prove that the information was commercial or financial, and obtained from a person, to justify withholding.

Last, plaintiff's attempt to distinguish <u>Comstock</u>, <u>supra</u>, , 464 F. Supp. at 808  and <u>Clarke</u>, <u>supra</u>, 1986 U.S. Dist. LEXIS 29989, on the basis that "the Federal Reserve's liquidity programs are lenders of last resort," and the Reserve Banks therefore do not stand "to lose clientele" through disclosure of information is not persuasive. Plaintiff's Opposition at 34. The Board has presented five declarations explaining in detail why banks and other institutions will be reluctant to access the DW and SCLFs, and how the Board's statutory mission under sections 2A, 10B and 13(3) of the FRA would be impaired, if details of their borrowing are disclosed. Board's SJ Brief at 29-33. Plaintiff must do more than speculate that the Board's statutory mission would not be harmed to overcome this showing on summary judgment. <u>Carney</u>, <u>supra</u>, 19 F.3d at 812.

**4.   In the Alternative, the Board has Met its Burden Under Exemption 4 of Showing the Likelihood of Substantial Competitive Harm to Submitters of the Withheld Information**

In the alternative, the Board has met its burden under the second (competitive harm) prong of the exemption 4 test by submitting some five declarations from the director of MA and senior officers at two Federal Reserve Banks attesting that financial institutions, primary dealers,

and issuers of commercial paper purchased by the CPFF are likely to suffer substantial competitive injury if details regarding their borrowing at the DW or SCLFs are publicly disclosed.  Board's SJ Brief at 20-25.  Although the Court need not even reach the second prong, the plaintiff's argument that the likelihood of substantial competitive harm has not been established is without merit.[8]  Plaintiff's Opposition at 20-32.

The plaintiff confuses the standard of district court review in a FOIA action, which is de novo, 5 U.S.C. § 552(a)(4)(B), with the weight to be given affidavits submitted by an agency in support of a summary judgment motion.  Plaintiff's Opposition at 22-23.  The de novo standard applies to the district court's review of the agency's decision, and the burden is on the agency to sustain its action.  ACLU v. Dep't of Defense, 543 F.3d 59, 66 (2d Cir. 2008).  An agency's declarations in support of summary judgment, on the other hand, are "'accorded a presumption of good faith,'" which the plaintiff may overcome only through a showing of "bad faith" or "tangible evidence" that the claimed exemption does not apply.  Carney, supra, 19 F.3d at 812.  Plaintiff's argument that the Board's declarations "are not entitled to … deference" misstates the applicable law and should not be adopted.  Plaintiff's Opposition at 22.

That the Board's evidence is in the form of declarations from Board and Reserve Bank officers, rather than declarations from the borrowers that indirectly (through the Federal Reserve Banks) submitted information to the Board, does not mean that those declarations are "inadequate to support the agency's claim of entitlement to judgment …."  Plaintiff's Opposition

---

[8] The plaintiff's claim that the withheld information was not "obtained from a person" as required under exemption 4 is addressed in the Board's Opposition at 3-5.  See Plaintiff's Opposition at 19-20.  The plaintiff's argument that the Federal Reserve Banks are not persons, but rather "agencies" excluded from FOIA's definition of "person," Plaintiff's Opposition at 17-18, is contradicted by the Federal Reserve Act, which provides that each Federal Reserve Bank is a separate corporation which issues stock, has its own board of directors, and has the power, among other things, to sue and be sued in its own name, make contracts, appoint officers, hire and fire employees, and prescribe bylaws.  Board's SJ Brief at 43-44.

at 28; <u>see</u> <u>also</u> <u>id</u>. at 22.  The reason that the Board did not provide declarations from borrowers at the DW and SCLFs is obvious: the identity of those borrowers is one of the items of information being withheld under exemptions 4 and 5, and by identifying itself as a borrower by filing a declaration, a financial institution could bring upon itself the very competitive harm, described in the Board's SJ Brief at 22-25, that the Board is seeking to prevent.  FOIA does not require an agency to disclose exempt information to prove its claim to an exemption.  <u>Vaughn</u> v. <u>Rosen</u>, 484 F.2d 820, 826 (D.C. Cir. 1973) (agency's analysis claiming exemption need not be so specific "that if made public would comprise the secret nature of the information …..").

For the same reason, the absence of any reverse FOIA suits or objections to disclosure by the borrowers is not probative.  <u>See</u> Plaintiff's Opposition at 30-31.  The borrowers cannot be expected publicly to object to disclosure, thereby revealing information that they expect the Federal Reserve Banks and Board to keep confidential.  Moreover, there is no reason to expect such after-the-fact objections, since the Board's declarants have stated that the borrowers *have an understanding* that the Board and Federal Reserve Banks, and their agents, *will keep confidential* information regarding their borrowing.  McLaughlin Decl., ¶¶ 17, 19; Logan Decl., ¶¶ 29, 32; Baum Decl., ¶ 15; Palladino Decl., ¶¶ 13, 15; <u>cf</u>. Plaintiff's Opposition at 31-32 (arguing that no confidentiality agreements exist).

Moreover, because of the Board's unique role in overseeing Reserve Bank lending facilities and stabilizing the financial markets, the FRBNY's unique role in administering the DW and SCLFs and serving as a lender of last resort to financial institutions, and the FRBB's unique role in administering the AMLF, the Board's, FRBNY's, and FRBB's declarations are sufficient to show the likelihood of competitive harm for exemption 4 purposes.  In <u>Lion Raisins, Inc.</u> v. <u>USDA</u>, 354 F.3d 1072, 1080 (9th Cir. 2004), the Ninth Circuit upheld a district court's

summary judgment order in an exemption 4 case based solely on the affidavit of a senior compliance officer for the USDA attesting to the likelihood of substantial competitive harm to the facility he inspected.  As does Fox Business News, the plaintiff in that case claimed that the declaration "consist[ed] of 'utter legal conclusions ....'"  Id.; see Plaintiff's Opposition at 28 ("Board's ... declarations ... are long on speculation but conspicuously short on facts.").  The Ninth Circuit, however, upheld the district court's finding that the compliance officer's "position that he ha[d] held for over eight years, has made him 'very familiar' with the raisin marketing order that governs [the facility], and put him in 'almost daily contact' with raisin graders and supervisors .... [and his] experience lends considerable weight to his testimony ... [and his] conclusions are supported by detailed and specific descriptions of each category of information ... and the ways in which each category of information could be turned to [the facility's] competitive disadvantage."  Lion Raisins, supra, 354 F.3d at 1080.

Here, the declarations in support of the Board's SJ Motion describe the declarants' positions of responsibility that have made them very familiar with DW and SCLF lending facilities, the institutions accessing those facilities, and the likelihood of competitive harm to those institutions should that information be disclosed.  Madigan Decl., ¶¶ 1-5;[9] McLaughlin Decl., ¶¶ 1-4 ; Logan Decl., ¶¶ 1-4; Baum Decl., ¶¶ 1-4; Palladino Decl., ¶¶ 2-4.  The declarants' conclusions are supported by detailed and specific descriptions of the ways in which release of the names of borrowers at the DW and SCLFs, amounts of their loans, and other details regarding individual lending is likely to result in substantial competitive harm to the borrowers.

---

[9] Mr. Madigan is offered as a fact witness for the Board.  His knowledge of issues relating to the DW and SCLFs stems from his long tenure as an economist with the Board, director of MA, and deputy director, associate director and assistant director before that, and his supervisory responsibilities with respect to the DW and SCLFs.  Madigan Decl., ¶¶ 1-4.  He is not offered as an "expert" witness under Fed. R. Civ. P. 26(a) as the plaintiff claims.  Plaintiff's Opposition at 16, 22, 26.

McLaughlin Decl., ¶¶ 18-22, 26; Madigan Decl., ¶¶ 21-29; Logan Decl., ¶¶ 31-37; Palladino Decl., ¶¶ 14-18; Baum Decl., ¶¶ 14-16.  The Board's declarations are sufficiently detailed to meet the standard for summary judgment in the Second Circuit.

The only evidence plaintiff has mustered in response to the Board's showing is a declaration attaching SEC filings from three large institutions disclosing some limited borrowings at the SCLFs.  Plaintiff's Opposition at 29-30.  Nothing prevents the institutions from disclosing, should they choose to do so, their borrowings at the DW or SCLFs.  The fact that plaintiff has been able to muster evidence of only three such disclosures out of a large number of transactions in the approximately 6186 pages the Board is withholding underscores the Board's position that the vast majority of institutions choose to keep this information confidential, and expect the Board and Reserve Banks to do the same.

Plaintiff's argument that the Board's "proof consists of speculation and conjecture about the *possibility*" of substantial competitive harm misses the applicable exemption 4 standard.  Plaintiff's Opposition at 26.  To demonstrate the likelihood of substantial competitive harm, the Board need not show *actual competitive harm,* but rather, "[a]ctual *competition* and the *likelihood* of substantial competitive injury …."  Gulf & Western Industries, Inc. v. United States, 615 F.2d 527, 530 (D.C. Cir. 1980) (emphasis supplied) (citing National Parks & Conservation Ass'n v. Kleppe, 547 F.2d 673, 679 (D.C. Cir. 1976) ("National Parks II")); accord Utah v. U.S. Dep't of the Interior, 256 F.3d 967, 970 (10th Cir. 2001) ("evidence demonstrating the existence of potential economic harm is sufficient").

Here, the Board has shown that borrowers at the DW and SCLFs face actual competition in the relevant market, Board's SJ Brief at 20-21, a showing that plaintiff does not contest.  Plaintiff's Opposition at 20-30 (containing no discussion of competition in the relevant market).

The Board has shown that substantial competitive harm is *likely*.  Board's SJ Motion at 21-25.  A showing of *actual* harm is not required and would make no sense as such a high standard would almost certainly require release of exempt information, which FOIA does not require.  Vaughn, supra, 484 F.2d at 826.

The Board has shown through its declarations  that the "stigma" associated with borrowing from the lender of last resort could rapidly lead to a loss of public confidence in a depository institution, a sudden outflow of deposits (a "run"), a loss of confidence by market analysts, a drop in the institution's stock price, a withdrawal of market sources of funding, an acceleration of existing loans to the institution or the refusal to provide new loans, and, in extreme cases, closure of the institution, Madigan Decl., ¶ 22; McLaughlin Decl., ¶ 22; Palladino Decl., ¶ 18, which harms apply equally to primary dealers borrowing at the SCLFs, money market mutual funds and sellers of ABCP participating in AMLF, and issuers of securities purchased by the CPFF, Madigan Decl., ¶ 26; McLaughlin Decl., ¶¶ 20, 26; Logan Decl., ¶¶ 33-37; Palladino Decl., ¶¶ 16-20; Baum Decl., ¶¶ 16-17.  This harm qualifies as "competitive injury" for exemption 4 purposes as the institution could lose customers and sources of funding, and would be in a weakened position vis-a-vis its competitors.

The Board need not show "'affirmative use of proprietary information by competitors'" as the Plaintiff claims.  Plaintiff's Opposition at 27.  The Second Circuit rejected a similar argument in Nadler, supra, 92 F.3d at 96, in which the plaintiff disputed the FDIC's showing of competitive harm because the alleged harm "would not be 'competitive in nature, but political.'" The Second Circuit found this argument unpersuasive, holding that the fact that the harm to the FDIC as receiver -- a diminution in the amount it could realize on a development project -- "would result from active hindrance by [a community group] rather than directly by potential

competitors does not affect the fairness considerations that underlie Exemption Four." Id. at 97. Consequently, the Second Circuit held that the "[s]ensitive financial information about a project of this nature clearly falls within the class of materials that Congress exempted as 'confidential' in section 552(b)(4)." Id. Similarly, here, the fact that likely harm to borrowers could result from a loss of public confidence and similar mechanisms rather than direct use of the information by a competitor does not remove the harm from the type cognizable under exemption 4. See also Inter Ocean Free Zone, Inc. v. U.S. Customs Service, 982 F. Supp. 867, 872 (S.D. Fla. 1997) ("disclosure of confidential arrangements with customers … likely to give rise to objections from customers and disruption of customer relationships," constitutes cognizable harm under exemption 4).

### 5.   The Board Properly Withheld Information Under Exemption 5

Finally, plaintiff's argument that the Board did not properly invoke exemption 5 (inter- or intra-agency memorandums or letters) because the information at issue here was exchanged between the Board and the Federal Reserve Banks is specious. Plaintiff's Opposition at 34. The fact that Federal Reserve Banks are entities separate from the Board, Board SJ Brief at 43-44, does not detract from the exemption 5 argument. The same issue arose in FOMC v. Merrill, supra, 443 U.S. at 352, where the FOMC's Domestic Policy Directives, which are "essentially the FOMC's written instructions to the Account Manager" at the FRBNY, were held to be "'inter-agency or intra-agency memorandums or letters.'" Given that the Supreme Court has held that communications between the FOMC and the FRBNY are "inter-agency or intra-agency memorandums or letters" under exemption 5, it can hardly be disputed that communications between the Board and the Reserve Banks meet that test.

As the Supreme Court implicitly held in Merrill, whether or not the Reserve Banks are "agencies" is not determinative of the exemption 5 issue.[10]  Since Merrill, the courts have found that "Congress apparently did not intend 'inter-agency or intra-agency' to be rigidly exclusive terms, but rather to include [nearly any record] that is part of the deliberative process."  Ryan v. U.S. Dep't of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980) (protecting recommendations on judicial nomination process made by senators to Attorney General); accord Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 78-79 (2d Cir. 2002), cert. denied, 538 U.S. 1056 (2003) (protecting under exemption 5 recommendations from a U.S. attorney's office to the Webster Commission, which was established to serve "as a consultant to the IRS.").

The Board has already addressed plaintiff's argument that the "deliberative process privilege" is not applicable, Plaintiff's Opposition at 35; see Board's Opposition at 12, and plaintiff's argument that the Merrill exemption expires, Plaintiff's Opposition at 36-37; see Board's Opposition at 13-14, and will not revisit those arguments.  As set forth in the Board's SJ Brief at 34-37 and Board's Opposition at 12-14, the Board has demonstrated that it properly withheld information pertaining to DW lending under exemption 5 as applied by FOMC v. Merrill, supra, and is entitled to summary judgment on that alternative ground for withholding.

---

[10] Thus, the Board is not attempting to "have it both ways" by arguing that the Reserve Banks are agencies for purposes of exemption 5 but are "persons," and not agencies, for purposes of exemption 4 (see, supra pp. 11-13).  The Board has never argued that the Reserve Banks are agencies as defined by FOIA, and need not do so to prevail on its exemption 5 argument.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Board's SJ Brief and the

Board's Opposition, the Board's SJ Motion should be granted and the plaintiff's Motion should

be denied.

Dated: April 30, 2009

/s/Yvonne F. Mizusawa
Katherine H. Wheatley (KW7931)
Associate General Counsel
Yvonne F. Mizusawa (YM5081)
Senior Counsel
Board of Governors of the Federal
  Reserve System
20th and C Streets, N.W.
Washington, D.C.  20551
Ph: (202) 452-3436
Fax: (202) 736-5615
